SMITH, Plaintiff in error, vs. THE STATE, Defendant in error.

*March 10—April 3, 1928.*

*Burglary: Necessity of criminal intent: Separate trials of defendants: Discretion of court: Other offenses: Evidence of general scheme: Defendant at scene of crime.*

1. The element of criminal intent must be shown in a prosecution for burglary and must be proved beyond a reasonable doubt. p. 557.

2. The grant or refusal of a separate trial to defendants in a criminal case rests largely in the discretion of the trial court where the offenses arise out of the same transaction. p. 558.

3. In the prosecution of two persons for burglary, in which one defendant admitted his presence at the commission of the crime and possession of the stolen property, but denied a criminal intent, and his codefendant based his defense on an *alibi,* the refusal of the trial court to grant separate trials was not an abuse of discretion or prejudicial to defendant. p. 558.

4. While as a general rule other offenses cannot be proved to establish the offense charged, testimony as to other offenses may be admitted to show intent where they were committed pursuant to a general scheme. pp. 559, 560.

5. Where defendant denied that he had any criminal intent and claimed that he was a private detective and that he was attempting to obtain evidence which would implicate one of his associates in a murder which had previously been committed, evidence of other offenses committed pursuant to a general scheme is *held* admissible. p. 560.

ERROR to review a judgment of the municipal court of Langlade county: A. N. WHITING, Judge. *Affirmed.*

The action was begun August 1, 1927, and judgment entered on the 21st day of October, 1927.

On the 30th day of July, 1927, the store of the Langlade Lumber Company, located in the town of Ainsworth, Langlade county, was burglarized. The alleged burglars were the plaintiff in error, hereinafter called the defendant, one Casperson, and one Born, and these three parties, in order to further the perpetration of their criminal operations, tem-

porarily occupied as a residence and headquarters a certain shack located some eight or nine miles distant from where this alleged burglary was committed. After the commission of the offense charged, the stolen property was discovered upon the premises occupied by the alleged burglars, and in an effort to escape from the authorities the said Born was shot and killed.

The defendant and Casperson were jointly informed against and tried on the above charge. There were two trials. On the first there was a disagreement of the jury. A motion was duly made on the first trial by the defendant *Smith* for a separate trial, which motion was denied. Before entering upon the second trial the defendant again moved for a separate trial, which was also denied.

The defendant *Smith* in his own defense testified upon each trial, and it appears from his testimony that for a period of four or five years prior to the commission of the burglary he had been engaged by a private detective agency to perform special detective work; that he was a man with a high school education and possessed some university credits; that some time prior to the happening of the burglary a murder was committed in Kenosha county, and that the perpetrator of the offense had not been detected; that notice of a reward of $2,500 was published for the detection, arrest, and conviction of the offender; that the defendant *Smith* entertained strong suspicions that Born was guilty of the murder, and that in order to obtain a confession it would be necessary to gain the implicit confidence of the alleged suspect by associating with him and by participating in his criminal raids and conduct. The defendant further admits that every element of the crime of burglary is clearly established in this case excepting the essential element of intent.

The record also conclusively shows that in a number of expeditions resorted to by the three persons above mentioned, the evidence is such as to bring home to the parties

engaged therein knowledge that their purpose was criminal in its nature. Before entering upon the criminal expeditions above referred to, the defendant did not at any time notify the public authorities of his alleged object and purpose of his participation in the unlawful acts, nor did he make them known to any one until after his arrest, when he defended the criminal action upon the ground of lack of intention.

Upon the second trial the jury found the defendant *Smith* guilty, and a motion for a new trial having been denied, this writ of error was issued to review the proceedings in the trial court.

*Vernon J. McHale* of Antigo, for the plaintiff in error.

For the defendant in error there was a brief by *Earl J. Plantz,* district attorney of Langlade county, the *Attorney General,* and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. Plantz* and *Mr. Messerschmidt.*

DOERFLER, J. The defense of the defendant *Smith* is extremely novel, and counsel in their diligent search for cases based on similar facts have found and submitted none. The defense of lack of intention frequently arises in prosecutions for forgery, for uttering forged paper, for receiving stolen property, and other similar offenses, but there certainly seems to be a marked dearth of authorities on the subject of burglary, where the breaking and entry is in the nighttime, and where the person charged with the offense actively participates in the removal of the goods, and at the time of his arrest is found in possession of part of the stolen property. But be that as it may, the element of intention must be shown in a criminal case like this, and proven beyond a reasonable doubt.

The first error upon which defendant's counsel relies is based upon the refusal of the court to grant the defendant a separate trial, for the reason that the defendants advanced and relied upon separate, distinct, and antagonistic defenses.

As has already been said, the defense of the defendant *Smith* consisted of his claim that there was lacking the criminal intent while participating in the alleged burglary, and the defendant Casperson advanced and pressed as his defense an *alibi*.

The granting or refusal of a separate trial of defendants in a criminal case rests largely in the discretion of the court, where the offenses arise out of the same transaction. Joint trials ordinarily facilitate the speedy administration of justice, and on an application for separate trials the issue presented to the court and which it is called upon to determine consists of the question whether justice will be done by granting the motion. In the instant case the court had the broadest and most comprehensive view of the actual situation disclosed by the evidence upon the first trial. With the facts before it, it denied the application. Had the defendant Casperson complained of the refusal of the court to grant a new trial a somewhat different situation would be presented, for he denied being present at the time of the commission of the burglary, and also his participation in the offense. But the defendant *Smith* admitted his presence upon the night in question; also admitted that he had on his person and in his possession part of the stolen property when he was taken into custody. This left for the defendant *Smith* the only defense conceivable under the situation, viz. that there was no intent to commit a crime.

We are therefore led to the conclusion that the trial court properly exercised its discretion when it denied the application, and that such denial was not prejudicial to the defendant, and that it promoted the administration of justice.

Experience has taught the members of the legal profession and trial judges that where a number of defendants are jointly charged with the commission of a criminal offense, and where they are jointly tried, as a rule marked discrepancies appear in their testimony when they testify in their

own behalf. A number of insignificant discrepancies are called to the attention of this court in order to fortify the defendant's position that separate trials should have been granted. We are convinced that some of these discrepancies alleged are nonexistent, and that the others are of such a trivial nature that no special consideration need be granted them in this opinion.

The further claim is made by defendant's counsel that the court erred in the admission of evidence tending to prove other offenses. In the consideration of this alleged error the sole defense of the defendant *Smith* must be prominently borne in mind. The general rule that other offenses cannot be proven was established in the early history of the common law, and has obtained practically in all jurisdictions up to the present time. In 8 Ruling Case Law, p. 198, § 194, subject "Criminal Law," it is said:

"The general rule is, that when a man is put upon trial for one offense, he is to be convicted, if at all, by evidence which shows that he is guilty of that offense alone, and that, under ordinary circumstances, proof of his guilt of one or a score of other offenses in his lifetime, wholly unconnected with that for which he is put upon his trial, must be excluded. It is deemed to be not proper to raise a presumption of guilt, on the ground that, having committed one crime, the depravity it exhibits makes it likely he would commit another. It may be easier to believe a person guilty of one crime if it is known that he has committed another of a similar character, or, indeed, of any character; but the injustice of such a rule in courts of justice is apparent. It might lead to convictions, upon the particular charge made, by proof of other acts in no way connected with it, and to uniting evidence of several offenses to produce conviction for a single one."

In the same volume, on the same subject, sec. 197, one of the exceptions to the above rule is stated as follows:

"Where a felonious intent is an essential ingredient of the crime charged, and the act is claimed to have been innocently or accidentally done, or by mistake, when the result is

claimed to have followed an act lawfully·done for a legiti-
mate purpose, or where there is room for such an inference,
it is proper to characterize the act by proof of other like acts
producing the same result, as tending to show guilty knowl-
edge, and the intent or purpose with which the particular act
was done, and to rebut the presumption that might otherwise
obtain. . . . Again, it is competent to show that the crime
charged was part of a common scheme or plan which in-
cluded numerous offenses. . . . If the question is whether
a given act was accidental or intentional, the fact that the
actor has at numerous times performed similar acts under
circumstances forbidding the idea of accident is very strong
proof that the act under investigation was also intentional."

See, also, 16 Corp. Jur. 589; *Dawson v. State,* 32 Tex.
Crim. Rep. 535, 25 S. W. 21, 40 Am. St. Rep. 792; *Dietz v.
State,* 149 Wis. 462, 136 N. W. 166; *Fossdahl v. State,* 89
Wis. 482, 62 N. W. 185; *Paulson v. State,* 118 Wis. 89, 94
N. W. 771; *Fenelon v. State, ante,* p. 416, 217 N. W. 711,
218 N. W. 810.

The authorities are now practically uniform in holding
that where the offenses are committed pursuant to a general
scheme and under circumstances like those disclosed in the
evidence in the instant case, the testimony of such other of-
fenses may be admitted to show intent.

It is our view that there was ample evidence in this case to
warrant the jury in rendering a verdict of guilty.   The asso-
ciation of the three participants during the period of their
operations was unlawful from the beginning to the end; in
fact, they entertained no other purpose than the commission
of crime.   The defendant claims that his efforts were di-
rected against the commission of crime, and that he made
this manifest by his verbal attempts at persuasion; but not-
withstanding his protestations, his *acts* clearly manifested
active participation, and participation, as admitted by the de-
fendant himself, nullifies completely any verbal protestations.
There is no evidence in the case that the defendant notified
the public authorities of his alleged purpose or that notifica-

tion had been made to any one else before his arrest. Under these circumstances it is almost inconceivable that the jury could have arrived at any other verdict than that which was returned into court.

*By the Court.*—Judgment of the lower court is therefore affirmed, and the cause is remanded for further proceedings according to law.