HERDE, Plaintiff in error, vs. THE STATE, Defendant in error.

*November 9, 1940—January 7, 1941.*

Lynn H. Smith of Jefferson, for the plaintiff in error.

For the defendant in error there was a brief by the *Attorney General, William A. Platz,* assistant attorney general, and *John H. Matheson,* district attorney of Rock county, and oral argument by *Mr. Platz.*

FAIRCHILD, J. The objection of plaintiff in error, hereinafter referred to as "defendant," to the admission of testimony regarding his acts at the time of the commission of another crime early the same day is not altogether valid. While as a general rule a person charged with a particular offense has a right which should not be trespassed upon to have the evidence in support of such charge confined to that particular offense, there is an exception which permits the state to offer proof of other offenses so intimately connected with the one for which the defendant is on trial as to be evidentiary of intent, design, or motive. 1 Wharton, Criminal Evidence (11th ed.), p. 516, § 350 *et seq.* Testimony concerning the other offenses may be permissible under the exception to the rule for the purpose of identifying the defendant. 1 Wharton, Criminal Evidence (11th ed.), p. 507, § 348. The criminality of conduct is no reason for excluding evidence of that conduct when it is relevant and admissible. As said in *People v. Walters,* 98 Cal. 138, 141, 32 Pac. 864, "but whenever the case is such that proof of one crime tends to prove any fact material in the trial of another, such proof is admissible, and the fact that it may tend to prejudice the defendant in the minds of the jurors is no ground for its exclusion."

The evidence objected to identified defendant as the one who stole the car and drove it at the time of the perpetration of the robbery of Rineheimer. This evidence was of acts committed within a few (approximately twenty) hours of the shooting

and was so similar in nature and so closely connected as to show the attitude of mind on the part of the defendant to let nothing interfere with the accomplishment of his purpose and with the escape of himself and his companion. *State v. Starr,* 24 N. M. 180, 173 Pac. 674. See also 63 A. L. R. 605. At the time of the killing of Vernon Rineheimer a robbery had just been committed. The robbers were fleeing. In making their escape they shot and killed Rineheimer. The robbers were not known. They drove away in an automobile bearing the license number 436059. One way of identifying them was to show whose automobile it was and who was using it. The testimony objected to came when the owner of the automobile appeared. He was permitted to testify that it was his car and that he was not using it. It naturally and logically followed that he be permitted to testify who was using it, if he knew. That the circumstances of defendant's acquiring the car were such as to cast some reflection on the virtue of defendant would not render the testimony incompetent or irrelevant if it would throw some light on the motive of another closely connected act. 1 Wigmore, Evidence, p. 265, § 216, quotes the neat phrase of Mr. Justice BREWER in discussing the admissibility of evidence of this character as follows : "No man can by multiplying crimes diminish the volume of testimony against him." The defendant creates evidence against himself. The state discovers it and the jury acts upon it. Daily experience shows altogether too clearly that murder is an accompaniment of the crime generally described as a holdup. Guns are used and the holdup man may be, for the time being at least, desperate enough to kill.

The short and tragic story of the young men engaged in this crime after they entered upon a career of crime is a course of conduct showing intent to destroy anyone who might stand between them and the accomplishment of their purpose and their escape from detection and arrest. They procured the guns. They took the automobile from its owner by force and

appropriated it to their own use. Earlier in the day of the murder they conducted themselves in a manner evincing legal malice in their minds sufficient to constitute murder in the first degree in the event of a homicide. They discussed the question of disposing of the owner of the car. They fled in the car. They were in the same car when they stopped in Afton to rob Rineheimer. They were again attempting an escape from detection by fleeing in the same car they had stolen when the shooting occurred. Pursued closely by Vernon Rineheimer and Cordes, defendant's accomplice fired three shots one of which took effect and killed Vernon Rineheimer. In *Dietz v. State,* 149 Wis. 462, 468, 136 N. W. 166, Ann. Cas. 1913 C, 732, evidence of unlawful conduct on the part of the defendant was held to be proper as showing knowledge of the presence of officers at the time of the commission of a crime. It is there said that occurrences on the 6th and 7th of October "go a very long way to explain the extraordinary occurrences of October 8th, and throw much light upon the mental attitude of the defendant at that time. Due and seasonable objections were made by the defendant to the evidence of the previous acts of resistance to arrest on the general ground that it is not competent in a prosecution for one crime to introduce evidence of other offenses. This rule is so well established that citation of authorities in its support is unnecessary, but certain exceptions to it are equally well established, namely, that where such other offenses directly tend to prove some material element of the crime under investigation, such as guilty knowledge or some specific intent, they may be introduced in evidence. *Fossdahl v. State,* 89 Wis. 482, 62 N. W. 185; *Paulson v. State,* 118 Wis. 89, 94 N. W. 771." *Bradley v. State,* 142 Wis. 137, 124 N. W. 1024.

In the case at bar the jury was called upon to determine whether the defendant was guilty of murder in the first degree, the second degree, the third degree, or not guilty. As to murder in the first degree, the jury was instructed that the killing

must be from a premeditated design, and that design was present if the intent was present in the slayer's mind at any instant before or at the time of the commission of the act resulting in death. They were told they should return a verdict of guilty of murder in the first degree if they were satisfied beyond a reasonable doubt that there was a sufficient deliberation or premeditation to form a purpose or design to take life. The inquiry was particularly directed to ascertaining whether the intent to kill preceded the fatal act.

In proof of criminal intent, the conduct of a defendant on other occasions closely connected in point of time and plan may at times be relevant to throw light on the defendant's motives and intentions while doing the act complained of. *Smith v. State,* 195 Wis. 555, 560, 218 N. W. 822; *State v. Meating,* 202 Wis. 47, 50, 231 N. W. 263. "The intention with which a particular act is done often constitutes the burden of the inquiry, and to prove the intent it becomes necessary, in many instances, to extend the examination beyond the particular transaction concerning which the accused is upon trial. For the purpose, therefore, of proving intent, not of proving the act itself, it is often permissible to show other criminal transactions of the same sort springing from like mental conditions." 2 Jones, Evidence (2d ed.), p. 1161, § 624. See also 1 Bishop, Criminal Procedure, § 1067. Could the defendant have more clearly declared his purpose to do what was done by words than he did by his acts during the few hours he and his companion were engaged in their enterprise of crime? It seems not. Under the circumstances of this case the evidence was admissible.

Each of these young men, according to the record, had opportunity equal to that of many. Family, friends, church, and CCC camp had extended their encouragement and their assistance. A few days before this crime was committed they were the possessors of $300 honestly obtained. This they dissipated in riotous living and early in the morning of May 20th,

they clearly disclosed their intention to prey upon those who might be likely victims for them. That evening, after hiding out all day, they again took up the same course of conduct. As has been said, disconnected, remote, or independent acts may not be shown, still the prosecution can give in evidence acts connected by circumstances with the particular crime in issue. In the case at bar the connection between the act occurring in West Allis and the acts at Afton is established by the plan, design, and intent which the evidence shows the defendant and his accomplice had committed themselves to. 1 Wharton (11th ed.), p. 527, § 352. The actions and state of mind attendant upon the prior crime bore upon the issue on trial as to identity, motive, and intent. *People v. Ebanks,* 117 Cal. 652, 49 Pac. 1049, 1052; *State v. Henger,* 220 Wis. 410, 417, 264 N. W. 922.

We have considered the other errors assigned but upon the facts disclosed by the record we are of the opinion that nothing occurred which would warrant the granting of a new trial.

*By the Court*—Judgment affirmed.