STATE, Respondent, v. REYNOLDS, Appellant.

*September 10—October 5, 1965.*

For the appellant there was a brief and oral argument by *Adrian P. Schoone* of Racine.

For the respondent the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief were *Bronson C. La Follette,* attorney general, *William A. Platz,* assistant attorney general, and *Gerald Clickner,* district attorney of Racine county.

WILKIE, J. Two issues are presented on this appeal: First, was appellant denied his right to a speedy trial?

Second, did the trial court err in admitting testimony that materials in possession of a confederate, apprehended with appellant, came from the site of another alleged burglary which had occurred a week earlier?

*Speedy Trial.*

Sec. 7, art. I of the Wisconsin constitution and the Sixth amendment of the United States constitution [1] guarantee an

---

[1] This court considers that the Sixth amendment, U. S. Const., is made applicable to the states by the due-process clause. *State ex rel. Fredenberg v. Byrne* (1963), 20 Wis. (2d) 504, 123 N. W. (2d) 305.

accused the right to a speedy trial. Each case involving an alleged denial of this right turns on its own facts; [2] the facts in the instant case are these: Appellant and his coaccuseds were arrested on the evening of October 29, 1960. Two days later a complaint and warrant were issued and he was taken before a magistrate. Reynolds demanded a preliminary hearing which was set for November 7th. He subsequently waived the hearing. The information was filed December 15th and counsel was appointed at appellant's request. On December 28th the case was remanded, upon counsel's motion, to the court commissioner for a preliminary hearing. The preliminary was held March 1, 1961, and appellant was bound over for trial. Appellant pleaded not guilty at his April 19th arraignment and asked for a separate trial. This motion was granted and Kennedy alone was brought to trial April 26th. After the state had presented its case, the trial court directed a verdict of acquittal on two grounds: (1) Sec. 943.10 (1) (a), Stats., is not applicable to the entry of public buildings, and (2) the state had not introduced sufficient evidence to show that Kennedy had entered the school with intent to steal. On May 28th, appellant was imprisoned for a parole violation, and three days later the burglary charges against him and Strong were dismissed on the sole ground that the burglary statute did not apply to the entry of public buildings. The state appealed the Kennedy acquittal and the dismissals of the charges against Strong and Reynolds. Another attorney was appointed to represent appellant on the appeal. On February 6, 1962, this court affirmed the acquittal of Kennedy, but reversed the orders dismissing the charges against appellant and Strong.[3]

[2] *Kopacka v. State* (1964), 22 Wis. (2d) 457, 126 N. W. (2d) 78.

[3] *State v. Kennedy* (1962), 15 Wis. (2d) 600, 113 N. W. (2d) 372.

The case was remanded to the Racine county court on April 2d.

Appellant was released from prison May 29th, but the Racine county district attorney was not informed of the release. Efforts to locate appellant were unsuccessful until May 24, 1964, when the district attorney was advised by Michigan authorities that he was being held in that state. Appellant waived extradition and was returned to Wisconsin. After a jury trial, which commenced October 27th, appellant was convicted of burglary. He was represented by counsel.

In contending that his right to a speedy trial was violated, appellant points to the four-year delay between his arrest and his trial. But the "[m]ere lapse of time does not, by itself, constitute denial" of this right when the accused "is tried as soon as the orderly operation of the court permits." [4] Furthermore, an accused is required to take affirmative action to bring the case on for trial as a condition precedent to demanding the dismissal of the pending charges.[5] At no time did appellant request a speedy disposition of his case. The state's initial attempt to bring the case to trial was thwarted when appellant, at his own insistence, was granted a separate trial because his defense was antagonistic to that of Kennedy, his accomplice. Then the state had to appeal the dismissal of the charges against appellant which also came about as a result of his own motion. By the time the appeal had been decided, the case remanded, and the charge reinstated, a year and a half of the four-year period had elapsed. Shortly after the Racine county authorities learned

---

[4] *Kopacka v. State, supra,* footnote 2, at page 461.

[5] *Kopacka v. State, supra,* footnote 2; *State v. Carli* (1957), 2 Wis. (2d) 429, 86 N. W. (2d) 434, 87 N. W. (2d) 830, 357 U. S. 907, 78 Sup. Ct. 1151, 2 L. Ed. (2d) 1157; *State v. Sawyer* (1953), 263 Wis. 218, 56 N. W. (2d) 811, 346 U. S. 801, 74 Sup. Ct. 66, 98 L. Ed. 333.

of the results of the appeal, appellant was released from prison and absented himself from the state for nearly two years before being apprehended. Counsel was appointed for appellant after his return to Wisconsin, and after a motion to dismiss for lack of a speedy trial, he was tried and convicted. Thus, although a four-year interval might, at first blush, appear to be inordinate and unreasonable, an examination of the facts discloses that it was caused by appellant's own motions, the orderly conduct of the business of the court, and his own flight from the state.

Appellant contends, however, that his leaving the state cannot be held against him in resolving the speedy trial issue since he gained his release from prison by virtue of the district attorney's failure to file a detainer warrant with the prison authorities. This fact is of no import for two reasons. First, appellant cannot rely on any lapse on the state's part when he fled the state instead of taking "affirmative action" [6] in seeking disposition of his case. Appellant contends that he did not realize he had lost his appeal, but it is undisputed that he received a notice of appeal and although the record does not affirmatively disclose the fact, it is reasonable to assume that his attorney acted conscientiously and apprised him of the outcome. Second, only the time spent in custody, in one form or another, is considered when resolving the speedy trial question. Appellant cannot complain that he was not tried with sufficient haste when his own conduct prevented the judicial wheels from turning. If this were otherwise, a suspect who remained at large for a lengthy period, despite an outstanding warrant for his arrest, could point to the time lapse between the issuance of the warrant and his apprehension.

[6] See *Hansen v. State* (1965), 26 Wis. (2d) 238, 131 N. W. (2d) 837.

*Evidence of Other Burglary.*

Although Kennedy was found to have entered the school, he was acquitted because the proof was held insufficient to prove beyond a reasonable doubt that he entered the building with the intent to steal.

In the trial of appellant much of the evidence was the same as in the Kennedy case. Thus it was established that one door of the school had apparently been jimmied; that all of the doors were locked but could be opened from the inside; that appellant, Kennedy, and Strong came "charging out of the front entranceway;" that Strong was carrying a canvas bag containing a "hammer, maul, two drive pins, and a chisel;" that all three wore gloves even though the weather was mild; and that two crowbars, which did not belong to the school, were found in the school.

At the Reynolds trial additional evidence was introduced to show appellant's intent to steal. The tools in the canvas bag were specifically identified as burglarious tools; there was testimony that one of the crowbars had made the marks on the door; evidence that there was a good deal of money in the superintendent's office on the night of the break-in was introduced.

For the limited purpose of showing Reynolds' intent to steal, the state offered evidence of a burglary at a Two Rivers school that had occurred just a week before the Burlington break-in. Witnesses testified that a Two Rivers school had been entered and a hole knocked in a wall in order to gain access to a vault. Over $200 had been taken. Bits of tile and plaster found in the canvas bag at Burlington were sent to the FBI laboratory for comparison with samples of tile and plaster taken from the wall of the Two Rivers school. Over appellant's objection, testimony by two FBI agents employed at the laboratory that the fragments in the

bag matched the fragments from the Two Rivers school was admitted.

Evidence may be admitted "of other occurrences in which a defendant has participated, when such others are similar in facts and close to the time of the offenses for which a defendant is on trial." [7] This evidence is admissible not to prove the defendant guilty of the crime charged but rather to show some element of that offense. [8] However, it must be shown that the accused had some connection with the other offense. [9] Appellant contends that the admission of this testimony was erroneous because Strong, not he, was carrying the bag and also because the state did not specifically link him with the Two Rivers burglary. The state counters that the possession of the bag by appellant and his cohorts at the time of their arrest—regardless of who was physically toting it—constitutes sufficient nexus to the Two Rivers crime to render the evidence admissible.

In *State v. Lombardi,* [10] evidence of events in which Lombardi participated at a house of ill-fame was held admissible on a charge against him for knowingly failing to enforce the laws relating to prostitution against the house. In *Herde v. State,* [11] admission of evidence was allowed that the defendant had recently committed a robbery under circumstances

---

[7] *State v. Lombardi* (1959), 8 Wis. (2d) 421, 438, 99 N. W. (2d) 829.

[8] *Herde v. State* (1941), 236 Wis. 408, 295 N. W. 684; *Kluck v. State* (1937), 223 Wis. 381, 269 N. W. 683; *State v. Meating* (1930), 202 Wis. 47, 231 N. W. 263.

[9] "In a class of cases where a specific intent is an essential element of the crime, other similar acts so closely connected with that charged as to tend directly to show the intent characterizing the latter may be proved for that purpose." *Baker v. State* (1903), 120 Wis. 135, 145, 97 N. W. 566; see also 22A C. J. S., Criminal Law, p. 774, sec. 686.

[10] *Supra,* footnote 7.

[11] *Supra,* footnote 8.

like the one for which he was on trial. In *Kluck v. State,*[12] evidence connecting a defendant with the transportation of illicit alcohol a month or so preceding the seizure of a still was held competent as tending to prove that the manufacture and traffic in illicit liquor was a continuing offense and proof of these acts tends to prove a specific element of the crime charged. In *State v. Meating,*[13] involving a prosecution for concealing stolen automobiles, evidence showing concealment of other stolen automobiles was held to be properly received as tending to establish some ingredient of the offense charged. In *Smith v. State,*[14] where the defendant was also charged with burglary, testimony of other offenses was held admissible to show the element of intent. Finally, in *Dietz v. State,*[15] in a prosecution for murder committed by the defendant when he shot a law-enforcement officer who with other officers had surrounded the home and laid seige to it, the state was permitted to introduce evidence that the defendant frequently and uniformly during the preceding years had made armed resistance to arrest and threatened to shoot the officers on sight.

In each of these cases the evidence showed that the accused had actually been involved in the other crimes, offenses, or occurrences. Here, there was no evidence that Reynolds actually was involved in the Two Rivers break-in.

The state relies on *Neubrandt v. State*[16] to support its contention that this evidence was properly received even though there was no direct evidence that Reynolds was involved in the Two Rivers episode. In *Neubrandt* a building was entered and items belonging to the owner and a boarder were taken. The defendant had possession of all the stolen

---

[12] *Supra,* footnote 8.
[13] *Supra,* footnote 8.
[14] (1928), 195 Wis. 555, 218 N. W. 822.
[15] (1912), 149 Wis. 462, 136 N. W. 166.
[16] (1881), 53 Wis. 89, 9 N. W. 824.

goods when arrested, and evidence that he was found with the boarder's property was deemed properly admissible at his trial for stealing the owner's. The instant case presents a quite different situation on the facts. Although it was not proved that Neubrandt had stolen the boarder's property, he was implicated because all of the goods were found in his possession. None of the tools or fragments associated with the Two Rivers burglary were found in Reynolds' possession. The state argues, however, that since the bag was carried by one of the three men when they were seized, under the circumstances possession by one is tantamount to possession by each. The danger inherent in such a theory is that this still does not tie appellant up with the Two Rivers burglary. It is reasonably conceivable that appellant joined up with Kennedy and/or Strong only subsequent to the assault on the Two Rivers school. Every doubt must be resolved in favor of the defendant.

Having failed to establish either that the bag belonged to or was in the possession of Reynolds or that he actually played a role in the Two Rivers affair, the state has not shown a sufficient connection with the other break-in. Consequently it was error to have admitted this evidence even for the limited purpose for which it was offered.

The evidence thus received in error was undoubtedly prejudicial to defendant and the judgment of conviction must be set aside and the cause must be remanded for a new trial.

We are asked by the attorney general to reconsider what was said by this court in *Kennedy,* wherein the majority of the court upheld the judgment of acquittal involving Reynolds' confederate, Kennedy, stating:

". . . the inference of intent to steal could not properly be drawn from the evidence with sufficient certainty to overcome the presumption of innocence and to meet the standard of proof beyond a reasonable doubt." [17]

[17] *State v. Kennedy, supra,* footnote 3, at page 613.

Specifically, the attorney general urges that an inference or presumption of intent to steal "arises upon proof of the breaking and entering of a building or attempt to do so, without consent in the nighttime," which inference or presumption "is a sufficient basis for submitting the case to the jury and for a finding by it of the element of an intent to steal in the absence of explanation by the accused."

Under sec. 943.10, Stats., one found guilty of burglary may be sentenced to as much as ten years in prison. The statute specifically requires that the entry be "with intent to steal or commit a felony." Thus, it not only covers an entry made "with intent to steal" but others made with intent to commit arson, a sex offense, or any other crime classified as a felony. It is conceded that it is difficult in many cases to prove the requisite intent. What the state is asking here is that, on a showing of breaking and entering a building, or an attempt to do so, without consent in the nighttime, there "arises" with nothing more, an inference that the defendant is there with intent to steal. The breaking or entering may have been with an intent to commit a felony entirely different from stealing, yet the state would infer an intent to steal. The entry may have been made with the purpose of committing a misdemeanor or for an entirely innocent purpose. We do not think it unreasonable for the legislature to require proof of "intent to steal or commit a felony" in order to gain a conviction for burglary with the attending maximum ten-year imprisonment. It should be noted that sec. 943.14, Stats., makes it a separate crime punishable by a fine of not more than $200 or imprisonment of not more than six months or both where one "intentionally enters the dwelling of another without the consent."

It is entirely reasonable to require the prosecution to establish each element of the crime by proving each element in accordance with the prevailing standard of proof beyond a

reasonable doubt. The change in the *Kennedy* rule advocated by the state would really do more than raise an inference that the defendant had entered the building with "intent to steal;" it would constitute a rebuttable presumption which would effectively destroy the normal presumption of innocence. After considering all of the arguments both pro and con as applied to the facts of this case, we see no reason for adopting the rule change suggested by the attorney general or in making any modification in the holding in *Kennedy*.

*By the Court.*—Judgment reversed, and cause remanded for a new trial in accordance with this opinion.

FAIRCHILD, J., dissents, being of the opinion the judgment should be affirmed.

GORDON, J. (*concurring*). I believe it essential to limit the prosecution to prior *convictions* in offering proof of previous, related conduct as a means of proving the accused's intent to commit the crime currently charged.

Under the holding of the majority it is sufficient if the accused was personally involved in previous acts which were similar in facts and close in time to those acts for which he is presently being tried. *State v. Lombardi* (1959), 8 Wis. (2d) 421, 438, 99 N. W. (2d) 829.

In my opinion, it is improper to admit proof of prior misconduct unless the accused had either admitted such offense or had been found guilty thereof. We do not presume guilt; we presume innocence. This is true of current charges as well as previous incidents. In attempting to prove guilt, should the prosecution be permitted to show a defendant's intent to commit a present crime by the mere fact of his involvement in an earlier episode? I believe that the majority's position invites the jury to treat the accused as *guilty* of the earlier misconduct even though such fact has not been proved.

Even if Mr. Reynolds had been at the scene in Two Rivers, we would surely not permit any evidence as to that transaction to be offered in his current trial if he had been tried and acquitted of the previous event. For the same reason, since he is presumed innocent of such earlier event, it seems to me improper to allow proof of such event so long as the cloak of innocence relating to that episode still surrounds him.

Under the facts of *State v. Kennedy* (1962), 15 Wis. (2d) 600, 113 N. W. (2d) 372, it was held that there was no inference or presumption of an intent to steal under sec. 943.10 (1), Stats., by reason of one's breaking and entering into a school building. As was brought out in that case and is again recognized in the majority opinion in the instant case, the entry may have been for "the purpose of committing a misdemeanor or for an entirely innocent purpose." Although the prosecution could not in such manner create an inference of the accused's felonious intent, the approach of the majority in effect would allow the prosecution to lift itself by its own bootstraps. The state can prove an intent to steal by showing that the accused participated in other occurrences similar in facts and close in time—even though he was never convicted of such prior acts.

A corollary may be drawn to the rule which permits an accused who has taken the stand in his own behalf to be impeached on cross-examination by proof of his having been convicted of previous crimes. The fact that he was previously accused or previously indicted would not be enough to qualify as a proper basis for impeachment. *Schroeder v. State* (1936), 222 Wis. 251, 259, 267 N. W. 899; *Koch v. State* (1906), 126 Wis. 470, 474, 106 N. W. 531; see also sec. 325.19, Stats.; 20 A. L. R. (2d) 1421, 1425, 1434. This concept was well expressed in *United States v. Haynes* (D. C. Pa. 1948), 81 Fed. Supp. 63, 68:

"Examination cannot be made as to whether a defendant has ever been arrested, incarcerated, indicted or engaged in the violation of a law. These facts are immaterial for even innocent persons are arrested and subject to indictment."

The Georgia court of appeals recognized the same analogy in *Waters v. State* (1950), 82 Ga. App. 608, 609, 61 S. E. (2d) 794:

"Although a witness in a case may be discredited by showing his conviction of an offense involving moral turpitude, he may not be discredited by showing merely that he was charged and tried for such offense, since 'until there is proof of conviction he is protected by the legal presumption of innocence.' . . . The same rule applies where a defendant on trial for a criminal offense is sought to be connected with other criminal transactions."

In the case at bar, the majority opinion, in rejecting the state's argument that the carrying of the bag by a companion was equivalent to Reynolds' possession of it, asserts the following:

"The danger inherent in such a theory is that this still does not tie appellant up with the Two Rivers burglary. It is reasonably conceivable that appellant joined up with Kennedy and/or Strong only subsequent to the assault on the Two Rivers school. Every doubt must be resolved in favor of the defendant."

In my opinion, this would be true even if the proof showed that Reynolds was carrying the bag or had been at the Two Rivers school. Resolving every doubt in his favor, as the majority acknowledges must be done, it is not inconsistent with Reynolds' innocence that he was at the Two Rivers school, was the owner of the bag or was in personal possession of the bag. Not having been convicted of the Two Rivers event, Reynolds must be presumed innocent as to it.

It would appear that the supreme court of Tennessee has adopted a rule comparable to that suggested in this concurrence. *Wrather v. State* (1943), 179 Tenn. 666, 169 S. W. (2d) 854. In a recent decision, the Georgia court of appeals, in *Dandridge v. State* (1964), 109 Ga. App. 33, 134 S. E. (2d) 814, said:

"Ordinarily, it is error to admit in evidence, over objection, an indictment against the defendant for another offense upon which there has been neither an acquittal nor a conviction, even though it might otherwise be admissible as an exception to the 'other transactions' rule."

A case which squarely adopted the rule suggested in this concurring opinion is *United States v. Haynes* (D. C. Pa. 1948), 81 Fed. Supp. 63, 68, where the court said:

"In short, acts of misconduct not resulting in conviction are not the proper subjects of cross-examination to impeach a witness or to establish and show intent, motive, identity, scheme or plan."

### *Conclusion.*

Actual conviction should be required before the prosecution is permitted to offer proof of previous occurrences. I think our basic concept of presumed innocence makes the adoption of this rule a logical necessity. Innocent persons may become involved in a suspicious occurrence; innocent persons are even sometimes charged or indicted.

I am authorized to state that Mr. Justice BEILFUSS and Mr. Justice HEFFERNAN join in this concurring opinion.

CURRIE, C. J. (*concurring in part, dissenting in part*). I concur in all of Mr. Justice WILKIE's opinion except the last two paragraphs thereof. With respect to those two paragraphs I respectfully dissent. Where adult strangers, as

here, come into a community and use burglarious tools to enter a school building, I believe the jury is entitled to draw an inference of intent to steal in the absence of any evidence tending to establish a different reason for the illegal entry.