STRAIT, Plaintiff in error, v. STATE, Defendant in error.

*No. State 97. Argued January 3, 1969.—Decided February 7, 1969.*
(Also reported in 164 N. W. 2d 505.)

For the plaintiff in error there was a brief and oral argument by *Thorpe Merriman* of Fort Atkinson.

For the defendant in error the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief were *Bronson C. La Follette,* attorney general, and *William A. Platz,* assistant attorney general.

BEILFUSS, J. The defendant raises four issues:

(1) Did the state prove intent to steal, requisite to the crime of burglary as charged?

(2) Was it error to admit into evidence proof of the nature of previous criminal offenses?

(3) Did the court err in admitting into evidence admissions or statements against interest made to police officers?

(4) Should plaintiff be granted a new trial in the interest of justice?

The information alleged that the defendant on the 6th day of July, 1967, did intentionally and feloniously enter a building, to wit: the Spot Restaurant at 718 Pleasant Street, Beloit, Wisconsin, without permission of the person in lawful possession, Jo Ann Ballard, and with intent to steal therein, contrary to sec. 943.10 (1), Stats.

The parties agree that to warrant a conviction upon this information the state must prove beyond reasonable doubt three essential elements: (1) Intentional entry of building, (2) without consent of the person in lawful possession, and (3) with intent to steal.

The parties also agree that the first two elements have been sufficiently proven. The defendant contends the evidence is insufficient to prove intent to steal beyond a reasonable doubt and to overcome the presumption of innocence.

The building in question was in a business district in the city of Beloit and was owned by Mrs. Jo Ann Ballard. Mrs. Ballard did not live in the building but did live in Beloit. The building consisted of a first floor restaurant, known as the Spot Restaurant, a small apartment in the rear of the building, and a basement. The restaurant had not been operated or open since March, 1967. However, on the day in question, July 6, 1967, much of the restaurant equipment was still there, including cooking equipment, dishes and an empty cash register with the drawer open, a cigarette vending machine and other

equipment. At the time the restaurant was at least partially lighted by a light over the back bar. Both the front and back doors of the restaurant were locked. The apartment was rented to and occupied by a young woman college student.

At about four a. m., the Beloit city police officers were dispatched to the Spot Restaurant after a report that someone was breaking into the building. Several officers responded to the call and one of them discovered that a basement window in the rear of the building had been broken. The rear door of the basement was forced open by the officers. The basement was dark, but with the aid of flashlights the officers found and took into custody a Mr. Burright or Bereit. After some additional searching of the basement, the police, with the exception of Officer Rule, left the premises. Officer Rule remained to watch the building and wait for the owner, Mrs. Ballard.

Mrs. Ballard arrived at about five a. m. She opened the front door of the restaurant and inspected it with the officer. Nothing had been taken. They then proceeded to the basement. The basement did not contain anything of any particular value but they did want to cover the broken window. The basement light was turned on and the officer saw a piece of plywood which was large enough to cover the window. When he was about to take the plywood he discovered the defendant huddled behind it. The officer handcuffed the defendant and with the assistance of another officer placed the defendant in a squad car and took him to the police station.

The officers on the way to the station advised the defendant he did not have to make a statement and anything he said could be used against him in court. The officers did not question the defendant in the car, but after being advised he could remain silent the defendant volunteered the statements that he didn't give a damn; it didn't matter anyway, he had been caught and it was

one of those things when you got caught; and that he would be going to jail for quite a while.

At the trial Mrs. Ballard testified that she did not know the defendant and had not given him permission to enter the building. She also testified that nothing had been stolen.

The defendant testified in his own behalf. His testimony was that on the night of July 5th–6th he had been drinking in several taverns. He left a tavern at closing time and then rode around town with some strangers and Burright until about three a. m. The strangers dropped the defendant and Burright off at the State Cafe. They entered and ate a lunch. After leaving the cafe they started to walk home. While walking home on Pleasant street, near the Spot Restaurant, a car came up slowly behind them on the street with three to five kids in it. These kids or young people started shouting filthy names at the defendant and Burright and they responded in kind. They heard what they thought was a shotgun blast—it could have been a car backfire or a firecracker. The car went up the street a short distance and turned around. The defendant and Burright then ran into an alley and to the rear of the Spot Restaurant where the defendant kicked out the basement window and both entered to hide because they were afraid of the young men.

The police arrived shortly after the defendant and Burright had entered the premises. The defendant knew it was the police when they arrested Burright. He testified he continued to hide because "I was inside the building, I didn't want to be charged with burglary, it looked bad enough."

The defendant testified on both direct and cross-examination that he had been convicted on one previous occasion. The state then attempted to introduce Exhibits 1 and 2. The exhibits revealed the defendant had been convicted of three previous offenses, including burglary,

indicated the sentences imposed and that probation had been revoked. An objection to the exhibits was sustained but the exhibits were redrafted leaving out the sentences and probation revocations. When the revised exhibits were reoffered, defense counsel responded, "No objection." The court, however, instructed the jury that prior convictions could be considered only for impeachment purposes.

At the conclusion of the state's case, and before any evidence was offered by the defendant, he moved for a dismissal upon the ground the evidence was insufficient to sustain a conviction. This motion was denied by the trial court and defendant then proceeded with his evidence (the testimony of the defendant was the only evidence offered by the defense). A motion to dismiss or for a directed verdict was not made when testimony was closed. The arguments were made, the jury instructed, and the verdict returned.

The defendant now asserts it was error to deny his motion to dismiss. This contention has been answered in *State v. Wickstrom* (1961), 14 Wis. 2d 416, 419, 420, 111 N. W. 2d 176:

"Defendant argues his motion for dismissal at the close of plaintiff's case should have been granted as there was not sufficient evidence at that time to submit the case to the jury. It is true, not a strong case was put in but there was enough evidence for both issues to go to the jury. After the denial of the motion, the defendant put in his case. It has generally been held when a court has the power to direct an acquittal or dismissal of a charge against the accused and has refused to direct a verdict of acquittal at the close of the prosecution's case, the introduction of evidence by the defendant, if the entire evidence is sufficient to sustain a conviction, waives the motion to direct. *Wood v. Campbell* (1911), 28 S. D. 197, 132 N. W. 785; 2 Wharton, Criminal Evidence (11th ed.), p. 1521, sec. 882. See *State v. Coates* (1952), 262 Wis. 469, 55 N. W. (2d) 353 (venue); Anno. Directing Acquittal, 17 A. L. R. 925."

However, the question remains as to whether there is sufficient credible evidence to support the jury's verdict.

"On appeal in a criminal case the test of the sufficiency of the evidence for a conviction is whether the evidence adduced, believed and rationally considered by the jury was sufficient to prove defendant's guilt beyond a reasonable doubt." *Jensen v. State* (1967), 36 Wis. 2d 598, 607, 153 N. W. 2d 566, 154 N. W. 2d 769.

"Stating the rule conversely for the sake of clarity, the evidence when considered most favorably to the state and the conviction must be so insufficient in probative value and force that it can be said as a matter of law that no trier of the facts acting reasonably could be convinced to that degree of certitude which the law defines as 'beyond a reasonable doubt.'" *Lock v. State* (1966), 31 Wis. 2d 110, 115, 142 N. W. 2d 183.

Is the evidence sufficient to permit the jury to reasonably conclude beyond a reasonable doubt that the defendant entered the building with intent to steal?

"Intent is a state of mind existing at the time a person commits an offense. If intent required definite and substantive proof, it would be almost impossible to convict, absent facts disclosing a culmination of the intent. The mind of an alleged offender, however, may be read from his acts, conduct, and inferences fairly deducible from all the circumstances." 13 Am. Jur. 2d, *Burglary*, p. 352, sec. 52.

"The type of reasonable certitude required in criminal cases is moral certainty relating to the affairs of human conduct and grows out of informed experience with the common ways (mores) of man. It is based upon the certain constancy and uniformity in the free conduct of humans under given conditions or motives. Based upon long experience with the actions and motives of human nature, certain inferences of conduct may be drawn from various circumstances to a moral certainty. This is not to say that exceptions and possibilities may not exist but such possibilities in themselves do not prevent a person from forming a reasonable conviction beyond a reasonable doubt or to a moral certainty of the truth of a fact. This degree of certainty required to sustain a criminal

conviction may be attained upon circumstantial evidence as well as upon direct evidence." *State v. Johnson* (1960), 11 Wis. 2d 130, 136, 104 N. W. 2d 379.

The defendant's uncorroborated explanation of his unlawful presence in the building and the events preceding the illegal entry could be properly rejected by the jury in its entirety as being incredible. It is apparent the jury did not believe his story, which they had a right to do.

The majority of the court is of the opinion that the circumstances as revealed by the evidence, which can be accepted as credible, and the inferences to be drawn therefrom, are sufficient to allow the jury, acting reasonably, to be convinced beyond reasonable doubt that the defendant did enter the building with the intent to steal. The evidence, without repetitious detail, that supports the findings, is as follows: The entry was made at four a. m. at the rear of the business building—a time and place where detection is least likely; the entry was without consent, forcible and with damage to the building; there were items in the restaurant that are common items of larceny; as soon as defendant knew his presence had been detected his attempt to conceal himself; his implausible explanation for his presence could be more damaging than no explanation at all; and the inference of a guilty conscience on the part of the defendant by his statement when discovered, "I didn't want to be charged with burglary," and his volunteered statements on his way to the police station to the effect that he didn't care about advice as to his constitutional rights and that he was going to jail for quite a while. All of these circumstances are consistent with an intent to steal. There is no evidence other than his implausible statement that suggests any innocent or other purpose for his illegal entry.

It is true that the defendant was not armed and no burglarious tools were found. A burglary can and often is committed without arms or burglarious tools. Nothing

was stolen. But the forcible entry was reported and defendant knew of the presence of the officers within a very few minutes of the entry. It is unlikely the defendant would be caught with stolen goods in hand under these circumstances.

The defendant cites *State v. Kennedy* (1962), 15 Wis. 2d 600, 113 N. W. 2d 372, and *State v. Reynolds* (1965), 28 Wis. 2d 350, 137 N. W. 2d 14, in support of his position that the evidence is insufficient to prove intent to steal.

*Kennedy* and *Reynolds, supra,* were reconsidered in *Galloway v. State* (1966), 32 Wis. 2d 414, 145 N. W. 2d 761, 147 N. W. 2d 542. The holdings were reaffirmed but the cases distinguished upon the facts and a seeming distinction made between a breaking and entering into a public building as contrasted to a private building. At pages 421 and 422 we stated:

"Does the record contain sufficient proof of a felonious intent to uphold the conviction? In *State v. Kennedy* (1962), 15 Wis. (2d) 600, 113 N. W. (2d) 372, this court held that a presumption of an intent to steal does not arise solely from the proof of breaking and entering. Subsequently, in *State v. Reynolds* (1965), 28 Wis. (2d) 350, 137 N. W. (2d) 14, this court again rejected the state's contention that an inference to steal arises by a showing that there has been a breaking and entering. Said the court, at page 360:

" 'The breaking or entering may have been with an intent to commit a felony entirely different from stealing, yet the state would infer an intent to steal. The entry may have been made with the purpose of committing a misdemeanor or for an entirely innocent purpose. We do not think it unreasonable for the legislature to require proof of "intent to steal or commit a felony" in order to gain a conviction for burglary with the attending maximum ten-year imprisonment.'

"In our opinion, the conviction in the instant case can be sustained without the slightest withdrawal from our holdings in *State v. Kennedy* and *State v. Reynolds*. The two latter cases involved a public school building, whereas the case at bar involves private premises; one who

breaks and enters without consent into a private dwelling or a private office may more readily be found to have a felonious intent than one who breaks and enters into a public building."

The opinions in both *Kennedy* and *Reynolds, supra,* were dissented to by members of the court. In addition, they have been criticized as being contrary to the weight of authority [1] and inconsistent with the realities of human conduct.

It can be said as a verity that the intent most often associated with an unlawful entry of a building is an intent to steal. Crime statistics universally recognize it. An unauthorized person in your home or at your place of work or business during nonbusiness hours without a rational explanation usually creates a belief the person is there with the intent to steal. When apprehension or alarming interruption takes place before larceny is committed, proof of intent to steal must in most instances depend upon circumstantial evidence. When there is proof of an unlawful entry without consent of the person in lawful possession, in the absence of a rational explanation, proof of circumstances which would lead the ordinary person to conclude beyond reasonable doubt that the entry was with the intent to steal is sufficient to sustain a finding of guilt.

This opinion does not overrule *Kennedy* and *Reynolds* which rejected mere intentional entry without consent of the person in lawful possession as enough to infer an intention to steal. It does, however, qualify these opinions to the extent that additional circumstances such as time, nature of place entered, method of entry, identity of the accused and other circumstances, without proof of actual larceny, can be sufficient to permit a reasonable person to conclude the defendant entered with an intent to steal.

---

[1] *Hiatt v. United States* (8th Cir. 1967), 384 Fed. 2d 675.

The majority of the court is of the opinion that the circumstantial evidence in this case is sufficient to sustain the implicit finding of an intent to steal.

The defendant contends it was prejudicial error to admit evidence of the nature of his prior convictions.

On both direct and cross-examination the defendant incorrectly stated he had only one prior conviction. As stated above, the state then offered Exhibits 1 and 2 which reveal three prior convictions, including burglary, the sentences imposed and the probation revocation statement. The objection to the exhibits was sustained. At an in camera conference, in which the defendant personally, as well as counsel, participated, the certificates of conviction, Exhibits 1 and 2, were redrafted to exclude any reference to the sentences imposed or revocation of probation. The redrafted exhibits were then offered and defendant's counsel responded, "No objection."

Because the defendant had incorrectly testified as to the number of his prior convictions, the state was entitled to prove his actual convictions and the certificates as redrafted were admissible in evidence. In any event, when counsel stated "no objection," any claim of error was waived.[2]

The defendant also claims the statements he made to the officers on the way to the police station were inadmissible because the police had not warned him of his constitutional rights as required by *Miranda v. Arizona* (1966), 384 U. S. 436, 86 Sup. Ct. 1602, 16 L. Ed. 2d 694.

A pretrial *Goodchild* [3] hearing was conducted by the trial court. The court found the statements were volunteered and not in response to any interrogation by the

---

[2] *See Williamson v. State* (1966), 31 Wis. 2d 677, 681, 143 N. W. 2d 486, and cases cited therein.

[3] *State ex rel. Goodchild v. Burke* (1965), 27 Wis. 2d 244, 133 N. W. 2d 753.

police officers. Statements volunteered under the circumstances here are not within the prohibition of *Miranda*.[4]

The final contention of the defendant is that he should be granted a new trial in the interest of justice under sec. 251.09, Stats.

A new trial in the interest of justice is granted by this court, in our discretion, only in those instances where it clearly appears from the record that there has been a probable miscarriage of justice. The mere possibility of a contrary result in a new trial is not sufficient; there must be a showing of probable miscarriage of justice and probability of acquittal.[5] We are not convinced justice has miscarried nor that an acquittal is probable upon a new trial.

*By the Court.*—Judgment affirmed.

HEFFERNAN, J. (*concurring*). The modification herein of *Kennedy-Reynolds* makes those cases meaningless. Rather than to perpetuate a rule of doubtful value, which we now have twisted beyond the point of useful application, I would overrule the *Kennedy-Reynolds* precedents and adopt the majority rule that permits an inference that a burglarious entry is with the intent to steal.

I am authorized to state that Mr. Justice WILKIE joins in this concurrence.

---

[4] *See State v. Miller* (1967), 35 Wis. 2d 454, 467, 151 N. W. 2d 157.

[5] *Lock v. State, supra,* at page 118; *State v. Mathis* (1968), 39 Wis. 2d 453, 458, 159 N. W. 2d 729.