SCHROEDER and another, Plaintiffs in error, vs. THE STATE, Defendant in error.

*June 4—June 22, 1936.*

252

The cause was submitted for the plaintiffs in error on the brief of *Clement W. Dwyer*, attorney, and *Thomas C. Dwyer* of counsel, both of Green Bay, and for the defendant in error on that of *Thomas E. McDougal*, district attorney of Langlade county, the *Attorney General*, and *J. E. Messerschmidt*, assistant attorney general.

FRITZ, J. Defendants' first assignment of error is that the court erred in denying their motion for a change of venue on the ground of alleged prejudice in the community. The defendants made that motion upon the commencement of the second trial on April 16, 1935, and in support thereof they

contended that an impartial jury could not be had because of the prejudice aroused by a public statement made by the sheriff in the courtroom on March 19, 1935, upon the conclusion of the first trial, in the presence of the members of the first jury and other citizens; and also because of the fact that on March 18 and 19, 1935, news articles had been published in the Antigo Daily Journal reporting the proceedings and events in court on the first trial, and the sheriff's statement at the conclusion thereof, and also that the defendants were under suspicion and were therefore wanted on account of crimes committed in Waupaca, Forest, and Winnebago counties, and that on that account the defendants were held in custody by the sheriff of Langlade county for twenty-four hours. They contend that the latter statements by the sheriff and in the newspaper were without foundation in view of their discharge from that custody, but that the newspaper had a general circulation in the community and was read by practically all, and that therefore it would be quite impossible to get an impartial jury. So far as the record discloses, the sheriff's statement and his arrest and temporary detention of the defendants because they were wanted on account of certain crimes committed in adjacent counties were made in the customary and lawful manner followed in order to prevent the escape of persons duly charged with other offenses under such circumstances. Likewise, the newspaper articles appear to be but fair reports, published on an inside page of the paper, of the proceedings and events on the two days of the first trial and the sheriff's subsequent announcement and detention of the defendants on the other charges. There is no proof, by affidavits or otherwise, to show that there existed in fact any prejudice or unfair attitude against the defendants in the community. The court, in overruling defendants' motion, said that in its opinion, based upon reading the articles and knowing local conditions, they were not at a disad-

vantage in getting an impartial jury, and that they would be given the benefit of favorable rulings if prejudice appeared on *voir dire* examination. It seems that on that examination, eight jurors stated that they had read the newspaper articles, but did not remember the details, and it does not appear that the articles had left any impression or effect unfavorable to the defendants. There is no showing as to whether any of those eight jurors were among the twelve retained to try the actions. Consequently, there is no sufficient basis upon which to conclude that the court's denial of a change of venue was erroneous or prejudicial to the defendants. The granting of such a motion based on prejudice in the community is discretionary, and a denial thereof affords no ground for reversal unless it clearly appears that there was an abuse of discretion. *State v. Smith,* 201 Wis. 8, 10, 229 N. W. 51.

Defendants' second and third assignments of error are that the court erred in submitting any of the charges to the jury, and in refusing to set aside the jury's verdict of guilt as to each of the four counts, for the reason that there was, as a matter of law, reasonable doubt as to whether the defendants were guilty as to any of the offenses charged. Upon reviewing the record, we find positive and direct evidence, which, if believed by the jury, was sufficient to establish the following facts: The complaining witnesses, Ralph and Eugene Langlois, resided on a farm operated by their father, Moses Langlois, and located along a public road off the main highways. The farm buildings were about a quarter mile from that road, and the approach thereto was by a private driveway. The barn was over one hundred fifty feet from the house. In some other buildings, on a remote and secluded portion of the farm, an alcohol still was illegally maintained by some persons other than the defendants and the complaining witnesses. However, the latter had been employed occasionally by the operators of the still, who had sold

and delivered large quantities of alcohol to the defendants at the still. On the evening of September 26, 1934, the complaining witnesses, their parents, a sister, another brother, and Laddie Cherf, a brother-in-law, were in the farmhouse up to about 8 p. m., at which time the parents and sister retired. Within the following half hour, first Eugene, then Ralph, and finally Cherf went out to the barnyard. The automobiles in question had been parked there, but it was too dark to see a car at a distance of fifty feet. When Cherf went out and was within twenty feet of Ralph's Plymouth car, he could see him as he stepped into it. But prior thereto Eugene had left in his Overland car. When he had driven almost a quarter mile on the private roadway, he was stopped and held up by two men, whom he identified on the trial as the defendants. The holdup was effected by the defendants approaching from opposite sides of the car and roughly demanding it. Schroeder held a gun against Eugene's ribs and compelled him to get out. As the defendants drove off in his car, he told them that the radiator leaked and it needed oil and water, and they said he could find the car after two hours walk. He re-entered his parents' house in about twenty-five minutes. Ralph, upon stepping into his car which was parked about one hundred fifty feet from the house, was held up by two men, whom he likewise identified on the trial as the defendants. He was about to switch on the lights and start his car when he saw the defendants step up on the opposite sides. One of them likewise pointed a gun at Ralph, and as they ordered him out of the car Schroeder said: "If you don't be still or get out we will bump you off." He got out, and they drove off in the car and told him he could find it after an hour's walk. While that holdup occurred, Cherf, unbeknown to Ralph, stood twenty feet from the car and saw and heard all that occurred. He also identified the defendants in court and his testimony corroborated Ralph's in all material respects. Several weeks later, both automobiles were found

abandoned and damaged on an Outagamie county highway, and upon the report of that discovery to the sheriff of Langlade county, he had them hauled back to Langlade county. Through the numbers on license plates issued to the defendant Newman on another automobile to which a neighbor's attention had been attracted shortly before September 26, 1934, when it was left concealed in brush near the road along the Langlois farm, the sheriff suspected that Newman was involved in the thefts of the Langlois' cars; and, subsequently, the defendants were arrested and held on the charges made herein.

On the trial, Schroeder did not testify. Newman denied that he was at the places of the holdups at the times thereof, and that he had ever touched either of the stolen cars, or had anything to do therewith. In addition to those denials, the defense relied principally upon considerable evidence by Newman and three other witnesses as to the illicit manufacture and sale of alcohol to the defendants and others at the still on the Langlois farm to the knowledge and with the acquiescence of the Langlois family; and they also relied upon contentions that the testimony of the complaining witnesses and Cherf, although positive and direct as to the holdups, was unbelievable because of their testimony in respect to the following conduct on their part immediately after the holdups. Thus their testimony was to the effect that Cherf reentered the house shortly after the theft of Ralph's car. Ralph came in next, and a little later Eugene also came back. Each of the complaining witnesses told the family about the theft of his car, but neither then asked Cherf, whose automobile was also at the farm, to go or to take them to the office of the sheriff or the police at Antigo to report the thefts, although the farm was within twelve miles of Antigo and Cherf resided there and went home later that night. No report as to the thefts was made to the proper officials by either Ralph or Eugene until a week later, but the latter did

report the matter to the dealer from whom he had purchased the car on a deferred payment basis.

However, notwithstanding Newman's denials and the other evidence and contentions relied upon by the defense to impeach the credibility of the testimony of Cherf and the complaining witnesses, there were clearly issues for the jury as to the guilt of the defendants; and the evidence relied upon by the state fully warranted finding, beyond any reasonable doubt, that the defendants, at the times and places testified to by Eugene and Ralph, feloniously took each of the automobiles without the owner's consent and against his will, with the intent to convert it to the use of the defendants. In doing that, the defendants clearly committed larceny under sec. 343.17, Stats., as to each automobile. Likewise, in addition, the state's evidence warranted the jury in finding that the defendants took and operated each of those automobiles without the owner's consent upon the public highways after leaving the Langlois farm, and that the defendants were therefore guilty of violating sec. 343.18, Stats., in respect to each automobile.

Defendants' fourth assignment of error is that the court erred in denying the admission of testimony pertaining to the illicit alcohol activities of the complaining witnesses. The record discloses that no proof on that subject was excluded excepting that when the question, "Did you ever work with him [Freeman] in a still making alcohol," was put to Eugene Langlois on cross-examination, the court ruled: "You haven't any conviction here. If you had a conviction it would be different. Objection sustained." That ruling obviously indicates that the court was under the impression that the question was put in an attempt to impeach the witness' credibility by merely proving acts or conduct that might constitute the commission of some crime on his part. If that was the sole purpose of the answer sought to the question in that form, then the court's ruling was proper, because im-

peachment by reason of such conduct can only be effected by proof of a conviction for the crime. *Cullen v. Hanisch,* 114 Wis. 24, 29, 89 N. W. 900; *Remington v. Judd,* 186 Wis. 338, 341, 202 N. W. 679. As defendants' counsel failed to state that the question was put for any other purpose than the court assumed, no reversible error can be predicated now upon that ruling. But, furthermore, the record discloses that the court thereafter freely permitted defendants' counsel to cross-examine Eugene Langlois in respect to his alcohol activities at the farm, and likewise permitted several of the defendants' witnesses to testify at length in relation to the manufacture and sale of alcohol at the still on the farm and the employment of Eugene and Ralph at the still. There was no improper exclusion of or limitation upon the proof offered by the defense.

Defendants' fifth assignment of error is: "That the court erred in denying a new trial in that the verdicts are contrary to the law and the evidence and were inconsistent and contradictory." That assignment is based upon the contention that: "The offenses for which the defendants are indicted pertain to two certain automobiles at one certain time. There is no question that they can be found guilty of only one of the two offenses. To find them guilty of both offenses is undoubtedly double jeopardy."

Finding the defendants guilty of the crime of larceny as to each automobile in violation of sec. 343.17, Stats., under the evidence which warrants finding that they wrongfully and feloniously took from each of the complaining witnesses his automobile without his consent and deprived him thereof by applying it to their own use, is neither contrary to law and the evidence, nor is it inconsistent with or contradictory to also finding and holding that such taking of each automobile, without the owner's consent and the subsequent operation thereof on public highways of this state, also constituted the crime punishable under sec. 343.18, Stats. The evidence es-

tablished all elements essential to constitute the commission of each of those crimes, and the trial or conviction of the defendants for either of those crimes did not bar their prosecution and conviction for the other crime, on any theory as to former jeopardy. As was said in *Eastway v. State,* 189 Wis. 56, 206 N. W. 879:

". . . The crime thus defined by sec. 343.18 is not a lesser degree of the crime of larceny. It is a distinct offense created by statute, and an offense not necessarily included in the crime of larceny. To constitute the offense described by sec. 343.18 it is necessary that the automobile taken without the consent of the owner shall be operated upon a public highway of this state. This is no essential element of the crime of larceny. . . ."

Therefore, as was held in that case, a prosecution for larceny of an automobile is not a bar to a subsequent prosecution, based on the same act or transaction, for taking, using, and operating the same automobile on a public highway without the owner's consent, in violation of sec. 343.18, Stats., such offense not being a lesser degree of larceny but a distinct statutory offense. Even though each of the crimes defined in secs. 343.17 and 343.18, Stats., respectively, may be committed in the course of a single transaction, they are not but one and the same crime for the reason that there are distinct elements constituting the crime defined in one section, which are not included in the definition of the other. Under those circumstances:

"A conviction or acquittal upon one indictment is no bar to a subsequent conviction and sentence upon another, unless the evidence required to support a conviction upon one of them would have been sufficient to warrant a conviction upon the other. The test is not whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offense. A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the de-

fendant from prosecution and punishment under the other."
*Morey v. Commonwealth,* 108 Mass. 433; *State v. Brooks,*
215 Wis. 134, 139, 254 N. W. 374.

Defendants' sixth assignment of error is: "That the court
erred in failing to properly instruct the jury as to the ele-
ments necessary to constitute the crime of larceny." It does
not appear that defendants submitted or requested any in-
struction on that subject. On the other hand, the court in-
structed the jury: "If you are satisfied beyond a reasonable
doubt that the said automobiles were taken and converted by
the said defendants for their use with intent to steal said
automobiles, you will find the said defendants guilty of said
charge of stealing said automobiles as charged in said infor-
mation." That instruction was sufficient in the absence of
any request for further instructions on that subject.

Defendants' seventh assignment of error is: "That the
court erred in not ruling a mistrial because of the prejudicial
remarks of the complaining witness and the district attor-
ney." That assignment is based on the following proceed-
ings: Upon recalling Ralph Langlois for further redirect ex-
amination, the district attorney asked: "Q. Just a moment,
Mr. Langlois. You have been reluctant about testifying so
far, haven't you, for the reason that—is the reason for that
that you were threatened in the courtroom this morning by
one of these defendants?" The court said: "We will make
an investigation now. I want counsel to come in the office
right now." Then in chambers, the judge examined Ralph
Langlois and Elmer Granger (a defense witness) in relation
to alleged threats made to Ralph. Upon resuming trial in
the courtroom, Ralph testified, without any objection being
made, that Granger and the defendant Schroeder's brother
had told him in the hall that they "didn't want him to say
anything regarding this thing because it was not so." On
cross-examination by the defendants' counsel, Ralph testified
that he did not tell Granger and Schroeder's brother that he

lied because he was afraid of Powell, Hoppe, and Howard (alleged operators of the still); but that Granger and the brother had told him that if he would say that he had not had anything to do with it at all, there would not be anything done. No motion was made to strike any of that testimony. However, subsequently, at the request of one of the defendants' counsel, the court instructed the jury that the conference in chambers was held in the absence of the jury so that there would not be any evidence brought out in the courtroom that would be detrimental or incompetent, and that, "after that the court concluded it wasn't competent and wasn't material or necessary, therefore you can disregard it. You can exclude from your minds any suspicion of anybody tampering or anything else." In view of those instructions on that subject, there is no reason to believe that the jury continued under any improper impression by reason of the district attorney's question or the witness' answers. At all events, as defendants' counsel did not then request to have the proceedings declared a mistrial, or to have the jury further instructed on that subject, the defendants waived that matter.

Defendants'. eighth assignment of error is: "That the court erred in its prejudice shown toward the witnesses for the defense in the presence of the jury." That assignment is based primarily upon a few questions put by the court to the witness Granger and some remarks by the court in rulings made while he was on the witness stand. Those questions and remarks appear to have been induced and warranted by Granger's testimony and attitude while he was on the stand. They do not justify counsels' conclusions that the court thereby manifested any prejudice toward the witness. Even if the questions or remarks were deemed to have somewhat discredited Granger's testimony, the court certainly gave him ample leeway to testify in vindication of his questionable testimony, and no error warranting a reversal was committed by the court.

The defendants' ninth assignment of error is that the court should have granted a new trial because of perjury on the part of the complaining witnesses. The only motion which was made for a new trial was disposed of prior to the entry of judgment, and that motion, in so far as the credibility of those witnesses was concerned, was based solely on defendants' claims as to perjury by those witnesses because of conflicts and inconsistencies in the proof introduced on the trial. In that proof there was nothing that convincingly established perjury on the part of those witnesses or that there was basis for any reasonable doubt as to the defendants' guilt.

Now, on this appeal, one of the defendants' counsel improperly seeks to have us take into consideration alleged photostatic copies of affidavits purporting to have been made by the complaining witnesses on April 25, 1935, and in which there appear to be statements which counsel now states under oath he had knowledge of in July, 1935. Nevertheless, he failed to make any application to the trial court for a new trial or any other relief or judicial action upon the basis of those statements. Neither those photostatic copies of affidavits nor counsel's affidavit, dated June 5, 1936, come to this court under the certificate of the clerk of the circuit court. Under those circumstances, neither the defendants nor their counsel have any right to found any argument or bring into the case on this appeal any fact not disclosed by the record. *Schaefer v. Fond du Lac,* 104 Wis. 39, 80 N. W. 59; *Farmington Mut. Fire Ins. Co. v. Gerhardt,* 216 Wis. 457, 257 N. W. 595. In appeal cases all papers essential to the record must come to this court under the certificate of the clerk of the court below. *Hoffman & Billings Mfg. Co. v. Burdick,* 95 Wis. 342, 70 N. W. 470; *Tenney v. Madison,* 99 Wis. 539, 542, 75 N. W. 979.

*By the Court.*—The judgments are affirmed.