STATE, Appellant, v. GENOVA, Respondent.

*No. 76-128-CR. Argued March 3, 1977.—Decided April 19, 1977.*
(Also reported in 252 N. W. 2d 380.)

For the appellant the cause was argued by *John N. Reddin,* Milwaukee County assistant district attorney, with whom on the brief were *Bronson C. La Follette,*

attorney general, and *E. Michael McCann,* Milwaukee County district attorney.

For the respondent there was a brief by *Bruce C. O'Neill* and *Fox, Carpenter & O'Neill* of Milwaukee, and oral argument by *Bruce C. O'Neill.*

A brief amicus curiae was filed by *Frank J. Remington,* University of Wisconsin Law School.

ABRAHAMSON, J. The question presented in this appeal is whether the defendant's assisting another in the sale of property which the defendant knows to be stolen constitutes being a party to the crime of theft contrary to secs. 939.05,[1] 943.20(1)(a) (set forth below), and (3)(b),[2] Stats. We hold that it does.

---

[1] Sec. 939.05, Stats.:

"939.05 Parties to crime. (1) Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although he did not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act.

"(2) A person is concerned in the commission of the crime if he:

"(a) Directly commits the crime; or

"(b) Intentionally aids and abets the commission of it; or

"(c) Is a party to a conspiracy with another to commit it or advises, hires, counsels or otherwise procures another to commit it. Such a party is also concerned in the commission of any other crime which is committed in pursuance of the intended crime and which under the circumstances is a natural and probable consequence of the intended crime. This paragraph does not apply to a person who voluntarily changes his mind and no longer desires that the crime be committed and notifies the other parties concerned of his withdrawal within a reasonable time before the commission of the crime so as to allow the others to withdraw."

[2] Sec. 943.20(3)(b), Stats.:

"(3) Penalties. Penalties for violation of this section shall be as follows:

". . .

The facts alleged are that the defendant told undercover law enforcement officers that he knew a man (his co-defendant) who had a "hot" (stolen) outboard motor for sale for $400. After the officer expressed interest in buying the motor, the defendant arranged for a meeting of the officer and his co-defendant, and the sale transaction was completed. The motor had been stolen from its owner several weeks earlier. There is no assertion in the complaint that the defendant participated in any way in taking the motor from the owner.

Sec. 943.20 (1) (a), Stats., provides, in part, as follows:

"943.20 Theft. (1) ACTS. Whoever does any of the following may be penalized as provided in sub. (3):

"(a) Intentionally takes and carries away, uses, transfers, conceals, or retains possession of movable property of another without his consent and with intent to deprive the owner permanently of possession of such property."

The charging portion of the criminal complaint alleges that the defendant and an accomplice:

". . . did intentionally and feloniously transfer the movable property of William C. Bowles, having a value of more than $100 but less than $2,500, to wit: a 65 horse power outboard motor Model 650, serial number 3455161, having an approximate value of $700, without the consent of said William C. Bowles and with intent to deprive said William C. Bowles permanently of the possession of such property, contrary to Wisconsin statutes sections 943.20 (1) (a) & (3) (b) and 939.05."

The trial court dismissed the complaint holding that the defendant was improperly charged with the crime of theft under sec. 943.20 (1) (a), Stats. To reach this result, the court interpreted the statute as requiring that the defendant must first take the property from its

"(b) If the value of the property exceeds $100 but not $2,500, a fine of not more than $5,000 or imprisonment for not more than 5 years or both."

owner and then, in addition, engage in one of the alternatively listed kinds of conduct—carry away, use, conceal, transfer or keep the property. Since the complaint did not charge a taking, it was defective.

The defendant argues that the theft statute does not contemplate more than one theft from the owner. "Transfer,"[3] as used in sec. 943.20 (1) (a), claims the defendant, cannot be stretched to mean selling stolen goods, *i.e.*, changing possession from the thief to a third party. The defendant contends that once the property is stolen from the owner the sale of the stolen property falls within the concept of receiving stolen property contrary to sec. 943.34, Stats.[4] Sec. 943.20 deals with the initial change in possession from the owner, and sec. 943.34 deals with this subsequent change in possession.[5] The

[3] The word "transfer" as used in sec. 943.20 (1) (a), Stats., is defined in sec. 939.22(40) as follows:

" 'Transfer' means any transaction involving a change in possession of any property, or a change of right, title or interest to or in any property."

[4] Sec. 943.34, Stats., provides:

"943.34 Receiving stolen property. Whoever intentionally receives or conceals stolen property may be penalized as follows:

"(1) If the value of the property does not exceed $100, by a fine of not more than $200 or by imprisonment for not more than 6 months or both.

"(2) If the value of the property exceeds $100 but not more than $2,500, by a fine of not more than $5,000 or by imprisonment for not more than 5 years or both.

"(3) If the value of the property exceeds $2,500, by a fine of not more than $10,000 or by imprisonment for not more than 15 years or both."

[5] Whether the defendant could have been charged under a section other than sec. 943.20, Stats., is not important in interpreting sec. 943.20. The draftsmen of the Criminal Code foresaw that a single act might constitute more than one crime. Sec. 939.65 provides that "If an act forms the basis for a crime punishable under more than one statutory provision, prosecution may proceed under any or all such provisions." *See* generally, Remington, *Charging, Convicting and Sentencing the Multiple Criminal Offender*, 1961 Wis. L. Rev. 529, 531, 539, 547.

defendant also contends that the language of sec. 943.20 (1) (a) must be read to require that a theft consists of first a taking (from the owner) and then an additional act of carrying away, using, transferring, concealing or retaining.

The State argues that the statute should be read in the disjunctive and not the conjunctive. The State argues that the statute should be read as if the following "ors" appeared in the statute: "takes and carries away, *or* uses, *or* transfers, *or* conceals, *or* retains." We agree with the State's interpretation of the statute that a violation of sec. 943.20 (1) (a), Stats., need not include a taking from the owner. We believe this interpretation is supported by the grammatical construction of the statute and the legislative history.

While the defendant's contention that "once the property is stolen from the owner, it cannot be stolen from him again," may be true as an observable fact, it does not speak to the reach of sec. 943.20 (1) (a), Stats., and the kinds of conduct which this section is intended to encompass. We cannot be misled because sec. 943.20 is captioned "Theft."[6] The language of the section does not use the term theft. Common law crimes were abolished in Wisconsin in the 1955 Criminal Code. Sec. 939.10, Stats.[7] We must look to the Wisconsin legislature's definition of a crime, not the common-law definition. Sec. 943.20 (1) (a) describes a series of acts made criminal thereunder, one or more of which, but not all of which, constituted theft under common law. The statute

[6] Sec. 990.001 (6), Stats., provides that "The titles to subchapters, sections, subsections and paragraphs of the statutes are not part of the statutes."

[7] Sec. 939.10, Stats., provides: "Common-law crimes are abolished. The common-law rules of criminal law not in conflict with the criminal code are preserved."

covers more than "stealing from the owner" as the legislative history clearly shows.[8]

Senate Bill 784, April 26, 1951, was the legislature's initial attempt to revise the Criminal Code, an effort begun in 1949 and finally completed in 1955. The objective was to clarify, codify and condense the myriad of piecemeal statutes that had developed over the years to avoid technical complexities in pleading and to eliminate the useless distinctions between embezzlement, the various kinds of larceny, and common-law theft. There were 26 statutes relating to theft and larceny, and a failure to charge the proper offense resulted in dismissal.[9]

The 1951 proposal provided:

"343.15 STEALING: (1) Whoever intentionally appropriates the property of another either without his consent or by means of deceit . . . may be penalized as follows . . . .

"(2) 'Appropriate' means to exercise dominion over property in a manner inconsistent with the rights of the

---

[8] The defendant's brief cites numerous cases from other jurisdictions relating to conduct constituting theft or receiving stolen goods. These cases are readily distinguished from the one before us because of the statutory or common-law differences in the jurisdictions. It is of limited consequence how theft was defined under the common law or how other jurisdictions choose to define "theft" in their statutes. We must look first and foremost to the language of the Wisconsin statute describing particular acts.

Receiving property knowing it to be stolen is an offense whose origin can be traced to medieval England. Receiving stolen property was first an appendage of theft and then became a separate substantive offense. Hall, *Theft, Law & Society* (2d ed. 1952). Several recent statutory reforms have treated receipt of stolen property as part of a general anti-theft statute. *See, e.g.,* Conn. Gen. Stat. Ann., sec. 539–119(8) (1975); Ill. Rev. Stat. Ch. 38, sec. 16–1(d) (1975); Kan. Stat. Ann., sec. 21–3701(d) (1972); Model Penal Code, sec. 223.1(1) (1962). *See* Blakely and Goldsmith, *Criminal Distribution of Stolen Property: The Need for Law Reform,* 74 Mich. L. Rev. 1512 (1976).

[9] 1953 Report of Wisconsin Legislative Council, Vol. V, pp. 111–115.

owner, *either by taking,* obtaining, using, *transferring,* concealing, *or* retaining possession of his property." (Emphasis added.)

The Legislative Council comment states: " 'Transfer' has been defined very broadly to mean any change in possession of right or title to, or interest in any property. It is used in this subsection in its broadest sense and includes selling the property, giving it away, or pledging or mortgaging it. . . . The phrase 'property of another' includes persons having any special interest in the property appropriated. An intentional exercise of dominion over the property in a manner inconsistent with their rights without their consent or by means of deceit is stealing."[10]

The bill did not pass, but it provided a foundation in the continuing effort to revamp the Criminal Code.

In 1953 the legislature continued the comprehensive revision of the Criminal Code. The 1953 draft provided:

"343.20 (1) Whoever does any of the following may be penalized as provided in subsection (3) :
"With intent to appropriate the property to his own use, intentionally takes, uses, transfers, conceals or retains possession of the property of another without his consent . . . ."

It should be noted that "takes" is in the disjunctive series including "transfers." An individual who does any one of those acts—takes, uses, transfers, conceals or retains possession—would violate the statute. It should also be noted that in neither the 1953 version nor its 1951 predecessor do the words "and carries away" appear after the word "takes."

The 1953 version was adopted by the legislature.[11] However, according to the legislative plan for the Crim-

[10] 1950 Report of Wisconsin Legislative Council, Vol. VII, pp. 89, 90.
[11] Melli & Remington, *Theft—A Comparative Analysis of the Present Law & The Proposed Criminal Code,* 1954 Wis. L. Rev.

inal Code revision, it was required that the legislation be reenacted during the 1955 session of the legislature. During the interim a new Criminal Code Advisory Committee of the Wisconsin Legislative Council was appointed to study the draft proposal and report its recommendations to the 1955 session of the legislature. The minutes of the Advisory Committee meetings are the only source of history regarding subsequent changes to sec. 343.20. The minutes disclose that at the May 7, 1955, meeting, the subcommittee on the theft statute presented for discussion a draft which read:

253, 269, makes it clear that the defendant in the instant case would have been properly charged under the 1953 version.

"b. *The Necessary Acts.* The person must take, use, transfer, conceal or retain possession of the property of another [footnote omitted] without his consent. These acts may be done by a person who has neither possession nor custody of the property and therefore 'takes' it from another without his consent. Or the person may have custody or possession of the property and then use, transfer, conceal or retain possession of it without the other's consent."

This view is similarly expressed by the Legislative Council comments: (1953 Report of the Wisconsin Legislative Council, Vol. V.)

"Subsection (1) (a) covers the misappropriation of property whether the property is in possession or custody of the actor or in the possession or custody of another." (p. 112)

"*Larceny.* [Some of the old sections] dealt with larceny, i.e., the taking of property out of possession of the owner without his consent. As pointed out earlier, the new section makes two changes in this crime: (1) *Under the new section the property no longer has to be taken out of the possession of the owner;* and (2) the intent to deprive the owner permanently has been modified somewhat." (Emphasis added.) (pp. 113–114)

The Report also comments as follows on the term "transfer" as defined in the definitional section introducing the Criminal Code:

" 'Transfer' is defined in section 339.22 to mean any change in possession of any property, or a change of right, title or interest to or in any property. It includes selling the property, giving it away, or pledging or mortgaging it." (p. 112)

"(a) Intentionally takes *and carries away,* uses, transfers, conceals, or retains possession of movable property of another without his consent . . . ." (Emphasis added.)

There appears to be no explanation for the additional phrase "and carries away." In view of the preceding two drafts which listed "takes" as one of several alternative kinds of prohibited conduct, it seems unlikely that the drafters intended that a violation consist of a taking *plus* one of the remaining alternative kinds of conduct. The "and carries away" phrase must have been intended to modify "takes."

If the statute required a "taking" from the owner in addition to a "transfer," the committee would have imposed a greater limitation on sec. 343.20 than existed under prior law. Common law larceny required both a taking and a carrying away;[12] to sustain a conviction for larceny the State had to prove that the defendant was not in lawful possession of the property at the time he appropriated the property to his own use. In 1887 the Wisconsin statute was changed so that a taking out of the possession of another was not necessary; if the defendant was in possession of the property as a bailee at the time he appropriated the property to his own use that was larceny.[13]

In his *amicus curiae* brief, Professor Frank Remington describes the history of sec. 943.20(1)(a), Stats., and concludes:

"There is no indication whatsoever in the legislative history that section 943.20(1)(a) of the statutes was intended to be more limited in scope than the crime of larceny was prior to the revision of the criminal code. To construe sec. 943.20(1)(a) to require that a defendant 'takes' as well as 'transfers' property would mean that sec. 943.20(1)(a) would not include larceny by

[12] Melli & Remington, *supra,* note 11 at 256, 257.
[13] Melli & Remington, *supra,* note 11 at 257, 258.

bailee or larceny by trick as those crimes existed prior to the revision. The 1950 draft and the 1953 draft made clear that 'transfers' was an alternative to 'takes.' The addition of 'and carries away' during the 1953–1955 legislative interim was intended to give further definition to the meaning of 'takes' and was not intended to require, as the trial judge held in this case, that there be a *taking* as well as a *transfer.*"

There is additional legislative history in support of the State's interpretation of the statute. In 1962 a committee of the Board of Criminal Court Judges prepared jury instructions to accompany the theft statute. Of the five members of the jury instruction committee two had served on the Criminal Code Advisory Committee which in 1953–1955 prepared sec. 943.20(1)(a), Stats., in the form in which it was ultimately enacted. In addition, Assistant Attorney General William A. Platz and Professor Frank J. Remington who were members of the Criminal Code Advisory Committee served as technical advisers to the jury instruction committee.

Wisconsin Jury Instruction 1441 reads as follows:

"Theft, as defined in section 943.20(1)(a) of the Criminal Code of Wisconsin is committed by one who intentionally *(takes and carries away) (uses) (transfers) (conceals) (retains possession of)*[1] '. . . movable property of another without consent and with intent to deprive the owner permanently of the possession of such property.' . . . is movable property."

Footnote 1 instructs the trial judge to "[u]se only the verb or verbs which appropriately describe the form of theft alleged or indicated by the evidence."

As Professor Remington observes in his amicus brief, "[i]t seems perfectly obvious the jury instructions committee would not have proposed the theft instruction unless the four former members of the Criminal Code Advisory Committee agreed that the instruction properly

construed the purpose of the Criminal Code Advisory Committee and of the draftsmen."

This court has held that written views of members of the Criminal Code Advisory Committee can properly be considered as "an authoritative statement of legislative intention." *See State v. Hoyt*, 21 Wis.2d 284, 299–300, 124 N.W.2d 47, 128 N.W.2d 645 (1964), and generally, *Wisconsin Valley Improvement Co. v. Public Service Commission*, 7 Wis.2d 120, 125, 95 N.W.2d 767 (1959).

Professor Gordon Baldwin of the University of Wisconsin Law School discussed the question presently before this court and reached the same conclusion we do here in his article entitled *Criminal Misappropriation in Wisconsin—Part I*, published in 44 Marquette Law Review, 253 (1960–1961).

"In construing 943.20 (1) a an unintentional ambiguity on the face of the statute should be resolved to determine specifically what the prosecution must prove. Does the statute require proof that a) the defendant did 'take' possession of certain property AND b) do something further? Or, need the prosecution merely show that the defendant either 'took and carried away,' or 'used,' or 'transferred,' or 'concealed,' or 'retained possession of,' property? . . .

". . . it seems sound to conclude that the statute describes the kind of behavior that might more accurately be described as a '. . . taking or exercise of unauthorized control. . . .' Hence the latter alternative interpretation of the ambiguity is preferred. [pp. 256–258]

". . .

"In summary, the requisite conduct to sustain a conviction under 943.20 (1) (a) is either a taking and carrying away, a use, a transfer, a concealment, or a retention." (p. 261)

On the basis of the grammatical construction of the statute and the intent of the draftsmen, we conclude that

sec. 943.20 (1) (a), Stats., encompasses the conduct alleged in the complaint in this case.

*By the Court.*—Order reversed and cause remanded for further proceedings not inconsistent with this opinion.