STATE of Wisconsin, Plaintiff-Respondent,

v.

Barbara Sue GORDON, Defendant-Appellant.†

Supreme Court

*No. 81–2280–CR. Argued January 7, 1983.—Decided March 1, 1983.*

(Also reported in 330 N.W.2d 564.)

† Motion for reconsideration denied, without costs, on April 12, 1983.

134

For the defendant-appellant there were briefs and oral argument by *Donna L. Hintze,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *Kirbie Knutson,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

SHIRLEY S. ABRAHAMSON, J. This is an appeal from a judgment of the circuit court for Milwaukee county, Michael D. Guolee, Circuit Judge, and from an order of the circuit court for Milwaukee county, Ralph Adam Fine, Circuit Judge. The circuit court entered a judgment adjudicating the defendant guilty of the crimes of kidnapping, robbery, burglary, and second-degree murder and sentencing the defendant as follows:

Kidnapping, 15 years;
Burglary, 8 years, to run concurrently with the kidnapping sentence;
Robbery, 8 years, to run concurrently with the kidnapping sentence;

Second-degree murder, 15 years, to run consecutively to the three other sentences.

At trial the circuit court specifically found that the kidnapping constituted the underlying felony for the second-degree murder conviction. It denied defendant's post-conviction motion to vacate the judgment of conviction for kidnapping and to resentence her on the other convictions. This court granted direct review of the judgment and order upon certification of the court of appeals. Secs. 808.05 (2) and 809.61, Stats. 1979–80.

The sole issue raised on appeal is whether the defendant's conviction of and sentencing for second-degree murder (felony-murder), contrary to sec. 940.02 (2), and kidnapping, contrary to sec. 940.31 (1) (a), which is the felony underlying the felony-murder conviction, exposed the defendant to double jeopardy. The state concedes (brief, p. 3) that in this case kidnapping is a lesser-included offense of felony-murder under the additional element test set forth in sec. 939.66 (1), Stats. 1979–80, and *Schroeder v. State*, 222 Wis. 251, 260–61, 267 N.W. 899 (1936). Proof of second-degree felony-murder under sec. 940.02 (2) requires proof of all the elements of kidnapping and requires proof of additional elements, namely that the death of another human being was caused as a natural and probable consequence of the commission of or attempt to commit the kidnapping, and proof of kidnapping does not require proof of any element which is not necessary to prove the second-degree murder charge. [1]

---

[1] The rule that the underlying felony is a lesser-included offense of felony-murder has been the rule in this state for many years. *State v. Carlson*, 5 Wis. 2d 595, 607–608, 93 N.W.2d 354 (1958); *Briggs v. State*, 76 Wis. 2d 313, 331–32, 251 N.W.2d 12 (1977). The state apparently concedes, and we agree, that there is no difference between the existing felony-murder statute and its predecessor statute (third-degree murder, see note 8) with respect to the issue of whether the underlying felony is a lesser-included

We conclude that the legislature did not expressly authorize punishment for both the underlying felony and felony-murder and that multiple punishment in this case violates the defendant's federal constitutional guarantee against being twice put in jeopardy. Accordingly we vacate the judgment of conviction for kidnapping, we reverse the order denying defendant's motion for resentencing, we vacate the sentences imposed for each crime, and we remand to the circuit court for resentencing on the convictions for robbery, burglary, and second-degree murder.

The defendant argues that conviction of and sentencing for both felony-murder and kidnapping, the greater offense and its lesser-included offense, violate her right to be free from double jeopardy guaranteed to her by the fifth and fourteenth amendments of the United States Constitution[2] and by Art. I, sec. 8 of the Wisconsin Constitution,[3] and violate her rights provided by the legislature under secs. 939.66(1) and 939.71, Stats. 1979–80. We need consider only the federal constitutional claim.

offense of felony-murder. Our prior decisions as to the felony being a lesser-included offense are therefore still valid.

Both the state and the defendant note that since felony-murder need not always be predicated on a kidnapping, the felony-murder and the kidnapping statutes are not the usual statutes setting forth greater- and lesser-included substantive crimes. The parties recognize, however, as we do, that this difference between statutes relating to felony-murder and the underlying felony and other statutes setting forth greater- and lesser-included offenses has not been considered significant. *See, e.g., Whalen v. United States,* 445 U.S. 684, 694 (1980); *Harris v. Oklahoma,* 433 U.S. 682 (1977).

[2] U.S. Const. amend. V provides: "No person shall . . . be subject of the same offence to be twice put in jeopardy of life or limb. . . ." This provision has been held applicable to the states through the due process clause of the fourteenth amendment. *Benton v. Maryland,* 395 U.S. 784 (1969).

[3] Wis. Const. art. I, sec. 8, provides: ". . . no person for the same offense shall be put twice in jeopardy of punishment. . . ."

The federal constitutional guarantee against double jeopardy protects *inter alia* "against multiple punishments for the same offense." *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969). The scope of this constitutional protection turns on the meaning of the words "same offense." The United States Supreme Court has determined that where a court imposes multiple punishment in a single trial for violations of two or more criminal statutes arising from the same criminal conduct, the constitutionality of the multiple punishment depends on whether the state legislature intended that the violations constitute a single offense or two offenses, that is whether the legislature intended one punishment or multiple punishment. Thus the court has said that "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter,* 51 U.S.L.W. 4093, 4095 (Jan. 19, 1983). *See also, Albernaz v. United States,* 450 U.S. 333, 340, 344 (1981); *Brown v. Ohio,* 432 U.S. 161, 165 (1977).

Since the defendant's federal constitutional rights in this case depend on whether the Wisconsin legislature intends to impose multiple punishment for felony-murder and the underlying felony, we must discern the legislature's intent. The United States Supreme Court has not defined the test to be used to determine legislative intent. We look for legislative intent in the language of the statutes and, where the statutes can reasonably be understood in more than one sense, in the legislative history or in both the statutory language and the legislative history. *Albernaz v. United States,* 450 U.S. at 340. But where there is no clear expression of legislative intent, the United States Supreme Court has set forth a rule of stat-

utory construction to determine whether the legislature has authorized multiple punishment. This court must assume, says the supreme court, that the legislature *"ordinarily* does not intend to punish the same offense under two different statutes. Accordingly, where two statutory provisions proscribe the 'same offense,' they are construed not to authorize cumulative punishments *in the absence of a clear indication of contrary legislative intent." Whalen v. United States,* 445 U.S. 684, 691–92 (1980) (Emphasis added.), quoted with approval in *Missouri v. Hunter,* 51 U.S.L.W. 4093, 4095 (Jan. 19, 1983). The criterion to use to determine whether the two distinct statutory provisions proscribe the same offense was set forth in *Blockburger v. United States,* 284 U.S. 299, 304 (1932), as follows: "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."[4] The *Blockburger* test has been referred to as the "additional element" or "ad-

---

[4] In *Missouri v. Hunter,* 51 U.S.L.W. 4093, 4096 (January 19, 1983), the court concluded as follows:

"Our analysis and reasoning in *Whalen* and *Albernaz* lead inescapably to the conclusion that simply because two criminal statutes may be construed to proscribe the same conduct under the *Blockburger* test does not mean that the Double Jeopardy Clause precludes the imposition, in a single trial, of cumulative punishments pursuant to those statutes. The rule of statutory construction noted in *Whalen* is not a constitutional rule requiring courts to negate clearly expressed legislative intent. Thus far, we have utilized that rule only to limit a federal court's power to impose convictions and punishments when the will of Congress is not clear. Here, the Missouri Legislature has made its intent crystal clear. Legislatures, not courts, prescribe the scope of punishments.[5]

"Where, as here, a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under *Blockburger*, a court's task of statutory construction is at an end and the prosecutor may

ditional fact" test. *State v. Rabe*, 96 Wis. 2d 48, 63, 64, 291 N.W.2d 809 (1980).

To determine whether the circuit court in this case committed constitutional error in imposing multiple punishment for kidnapping and felony-murder, we look first to the legislative intent as reflected in the language of the statutes. The legislature has set forth separate statutory offenses for kidnapping, sec. 940.31(1)(a), Stats. 1979–80,[5] and killing a person in the course of kidnapping, sec. 940.02(2), Stats. 1979–80,[6] and each statute authorizes punishment for violation of its terms. The statutory language does not, however, clearly express the legislative intent to impose multiple punishment when the violations of the statutes arise from the same criminal conduct. The fact that both statutes exist does not provide a sufficient basis to support the conclusion that there is a "clear" legislative intent to allow two convictions and two sentences where the same criminal conduct violates both statutes.

---

seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.

---

"[5] This case presents only issues under the Double Jeopardy Clause."

[5] Sec. 940.31(1)(a), Stats. 1979–80, provides as follows:

"940.31 **Kidnapping.** (1) Whoever does any of the following is guilty of a Class B felony:

"(a) By force or threat of imminent force carries another from one place to another without his consent and with intent to cause him to be secretly confined or imprisoned or to be carried out of this state or to be held to service against his will; . . ."

[6] Sec. 940.02(2), Stats. 1979–80, provides as follows:

"940.02 **Second-degree murder.** Whoever causes the death of another human being under either of the following circumstances is guilty of a Class B felony:

. . .

"(2) As a natural and probable consequence of the commission of or attempt to commit a felony."

Since the statutes setting forth the substantive offenses do not clearly reveal legislative intent to impose multiple punishment, we look to other sections of the criminal code to shed light on the legislature's intent. Sec. 939.71, Stats. 1979–80, proscribes two prosecutions for two offenses arising out of the same criminal act unless each statute setting forth the substantive crime "requires proof of a fact for conviction which the other does not require." This section substantially enacts the *Blockburger* test and reads as follows:

"**939.71 Limitation on the number of convictions.** If an act forms the basis for a crime punishable under more than one statutory provision of this state or under a statutory provision of this state and the laws of another jurisdiction, a conviction or acquittal on the merits under one provision bars a subsequent prosecution under the other provision unless each provision requires proof of a fact for conviction which the other does not require."

Since sec. 939.71 refers to a subsequent prosecution for the same offense after acquittal or conviction, it does not directly apply to this case which involves multiple punishment in a single prosecution. The statute does, however, reflect the legislative intent to forbid multiple prosecution (and thus punishment) for a single offense using the same test to define a single offense that the United States Supreme Court used in *Blockburger*. In enacting sec. 939.71, the legislature codified this court's statement of the "additional element" test adopted in *Schroeder v. State,* 222 Wis. 251, 260–61, 267 N.W. 899 (1936), interpreting this state's constitutional guarantee against double jeopardy. *See,* Wisconsin Legislative Council, V Judiciary Committee Report on the Criminal Code (February 1953), p. 55; *State v. Rabe,* 96 Wis. 2d 48, 63, 64, 291 N.W.2d 809 (1980). Both *Schroeder* and *Blockburger* involved multiple counts in a single prosecu-

tion.[7] Thus, sec. 939.71 codifies this state's constitutional rule relating to multiple punishment in a single prosecution to protect against multiple prosecutions (and multiple punishment) in successive prosecutions.

While sec. 939.71, Stats. 1979–80, is not directly applicable here, sec. 939.66, Stats. 1979–80, is. Sec. 939.66 applies to a single prosecution involving multiple counts. Sec. 939.66(1) states that a defendant may be convicted of either the crime charged or an included crime, but may not be convicted of both. Sec. 939.66(1), like sec. 939.71, codifies the *Schroeder-Blockburger* "additional element" test. Sec. 939.66(1) determines what crimes constitute an included offense and provides *inter alia* as follows:

"939.66 **Conviction of included crime permitted.** Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included crime, but not both. An included crime may be any of the following:

"(1) A crime which does not require proof of any fact in addition to those which must be proved for the crime charged; . . ."

The legislature apparently adopted sec. 939.66(1) because the penalty set by the legislature for the greater offense takes into account the fact that the defendant has also committed a lesser-included offense. Remington and Joseph, *Charging, Convicting, and Sentencing the Multiple Criminal Offender*, 1961 Wis. L. Rev. 528, 546.

We conclude that the legislative proscription against multiple punishment in secs. 939.66(1) and 939.71, com-

---

[7] The *Schroeder* case did not rely on *Blockburger* but on *Morey v. Commonwealth*, 108 Mass. 433 (1875), upon which the United States Supreme Court also relied in *Blockburger*.

Sec. 939.71 is not a complete statement of the state constitutional rule against double jeopardy. Wis. Legislative Council, V Judiciary Committee Report on the Criminal Code (February 1953), p. 55.

bined with the legislature's silence regarding multiple punishment for the specific crimes of kidnapping and felony-murder, reveal the Wisconsin legislature's intent to prohibit multiple punishment for felony-murder and kidnapping, the greater crime and its lesser-included offense. There is no clear expression of legislative intent that there be multiple punishment. Consequently, we need not delve further to discern legislative intent by using legislative history or the *Blockburger* test. Of course, since sec. 939.66(1) and sec. 939.71, Stats. 1979–80, incorporate the *Blockburger* test, we have already applied this test in this case.

The state argues that our analysis, however, cannot stop here. The state says if we were to hold that a person found guilty of felony-murder, a Class B felony, cannot also be punished for kidnapping, also a Class B felony, the defendant would be subject only to the maximum punishment of a single Class B felony, that is, twenty years. The state contends that the legislature could not have intended this result since it means that one who has committed a Class B felony could take a victim's life without fear of increased penalty; the actor would already be subject to a twenty-year sentence. According to the state, this result violates a basic theory and philosophy of punishment, namely deterrence, reveals an "ambiguity" in the statutory scheme, and demonstrates that the legislative intent is not as clearly expressed as we have found it to be. Of course this "ambiguity" in the statutory scheme arises only when the underlying felony is a Class B felony; it does not arise when the underlying felony is a less serious felony, such as a Class C or D felony.

The state argues that the legislative history of the felony-murder statute will reveal the clear expression of legislative intent required by *Missouri v. Hunter, supra,* and *Albernaz, supra,* to authorize multiple punishment.

The state contends that because the legislature clearly intended to make felony-murder an exception to its general proscription against multiple punishment set forth in secs. 939.66(1) and 939.71, we should ignore the proscription. We examine the legislative history to test the state's hypothesis.

From 1955 until the enactment of the present felony-murder statute in 1977, the defendant who was convicted and sentenced for felony-murder (third-degree murder) was subject to a maximum penalty of 15 years in excess of the prescribed sentence for the underlying felony. Sec. 940.03, Stats. 1973.[8] Although several persons involved in the 1953 criminal code revision had wanted to eliminate the provision for felony-murder, felony-murder remained part of the 1955 criminal code.[9] In *State v. Carlson, supra*, 5 Wis. 2d at 607–609, this court interpreted third-degree felony-murder as an independent substantive crime and held that the underlying felony was a lesser-included offense and that it was impermissi-

---

[8] Sec. 940.03, Stats. 1973, classifying felony-murder as third-degree murder, was adopted in 1955 and is the predecessor to sec. 940.02(2). Sec. 940.03, Stats. 1973, provided:

"Whoever in the course of. committing or attempting to commit a felony causes the death of another human being as a natural and probable consequence of the commission of or attempt to commit the felony, may be imprisoned not more than 15 years in excess of the maximum provided by law for the felony."

[9] "[T]he 1953 code dropped the felony-murder and misdemeanor-manslaughter concepts on the ground that punishing a man for unintended consequences had little place in a modern system of criminal law. But the critics of the 1953 code insisted on reestablishing felony-murder, although yielding to the extent of agreeing to treat the death as an aggravating factor in the principal felony." Platz, *The Criminal Code*, 1956 Wis. L. Rev. 350, 357 (notes omitted). Assistant Attorney General William A. Platz was a member of the Criminal Code Advisory Committee in 1953–55. Written views of members of the committee can be considered as authoritative statements regarding legislative intent. *State v. Genova*, 77 Wis. 2d 141, 151, 252 N.W.2d 380 (1977).

ble to convict and sentence for both felony-murder and the underlying felony.

In 1977, when substantial revisions were made in the penalty structure of the criminal code, another attempt was made to repeal the felony-murder statute. The bill proposing the repeal of third-degree felony-murder, Senate Bill 14, section 28, 1977 S.B.,[10] included a note explaining that third-degree felony-murder was superfluous because a person who caused another's death in the course of committing a felony could be convicted under one of the other homicide statutes.[11] The proponents explained the proposed repeal as follows:

"Present law already permits the sentencing of offenders on multiple counts for different crimes arising from the same act. For example, a person committing homicide while committing a robbery can be sentenced to concurrent or consecutive terms for both robbery and homicide. Therefore, the third-degree murder statute is unnecessary." Senate Bill 14, sec. 28, 1977 S.B.

Senate Bill 14 was, however, amended before it was enacted to include felony-murder as one type of second-degree murder. Assembly Substitute Amendment 1 to Senate Bill 14, section 6; sec. 940.02(2), Stats. 1979-80. There is nothing in the bill or in the records of the Legislative Reference Bureau explaining why the bill was amended to include felony-murder.

---

[10] This bill is included in the drafting file for ch. 173, Laws of 1977, at the Legislative Reference Bureau in Madison, Wisconsin.

[11] The circuit court in this case stated that it would have convicted this defendant of second-degree murder, contrary to sec. 940.02(1), Stats. 1979–80, had she been so charged. Sec. 940.02(1) provides:

"940.02 **Second-degree murder.** Whoever causes the death of another human being under either of the following circumstances is guilty of a Class B felony:

"(1) By conduct imminently dangerous to another and evincing a depraved mind, regardless of human life; . . ."

The state argues that the amendment reinstating felony-murder shows that the legislature realized that the assumption expressed in the original note in Senate Bill 14 was incorrect; the legislature apparently believed that situations might arise where a death occurs in the course of a felony and the elements required to convict under one of the homicide statutes would not be present. According to the state, the legislature retained the felony-murder statute to punish conduct which leads to such deaths. The state urges us to interpret the legislature's deliberate departure from the 1955 third-degree murder statute, in providing for a penalty for felony-murder that was not linked to the penalty for the underlying felony, to mean that the legislature intended to authorize the courts to impose multiple punishment.

We disagree with the state that the full history of the legislation interpreted in light of the state's explanation of the rationale for the need for multiple punishment presents a "clear" expression of legislative intent to authorize multiple punishment. We conclude that the legislative history does not reveal a clear legislative intent as to multiple punishment. The state's interpretation of the legislative intent from the legislative history is an interesting but unproved hypothesis.

Secs. 939.66(1)(a) and 939.71 are clear and express statements of the legislature's intent to prohibit multiple punishment for included crimes. Had the legislature intended to except felony-murder from its otherwise clear policy of no multiple punishment, the legislature could have easily adopted appropriate language in the felony-murder statute to express this intent.

The legislature is presumed to act with full knowledge of existing laws and judicial interpretations of them. *Glinski v. Sheldon*, 88 Wis. 2d 509, 521–22, 276 N.W.2d 815 (1979). Therefore, when it enacted sec. 940.02(2), Stats. 1979–80, the legislature is deemed to have been

aware of secs. 939.66(1) and 939.71, Stats. 1977, and of this court's interpretation of the third-degree murder statute construing the underlying felony as a lesser-included offense of felony-murder. While obviously aware of the third-degree murder statute that allowed imposition of a penalty in excess of the maximum provided for conviction of the underlying felony, the legislature nevertheless chose not to include such a provision in the new statute and not to make clear in any manner that it intended to allow multiple punishment for felony-murder and the underlying felony.

Inasmuch as the legislature did not clearly express its intent to authorize multiple punishment for felony-murder and the underlying felony and inasmuch as it did not specifically exempt felony-murder and kidnapping from the purview of secs. 939.66(1) and 939.71, this defendant's federal constitutional right to be free from double jeopardy was violated in this case. *Hunter v. Missouri,* 51 U.S.L.W. 4093 (Jan. 19, 1983); *Albernaz v. U.S.,* 450 U.S. 333 (1981).

The judgment of conviction of and sentence for kidnapping must be vacated. The sentence for second-degree murder, robbery, and burglary must also be vacated and the case remanded for resentencing on all charges. *State v. Morris,* 108 Wis. 2d 282, 290, 322 N.W.2d 264 (1982); *Robinson v. State,* 102 Wis. 2d 343, 356, 306 N.W.2d 668 (1981); *State v. Upchurch,* 101 Wis. 2d 329, 335–36, 305 N.W.2d 57 (1981); *Ronzani v. State,* 24 Wis. 2d 512, 520, 129 N.W.2d 143 (1964).

*By the Court.*—Judgment of conviction for kidnapping vacated; order denying resentencing reversed; sentences vacated; and cause remanded to the circuit court for resentencing.

LOUIS J. CECI, J. *(dissenting.)* Because I believe the majority has misconstrued the clear expression of

legislative intent to authorize multiple punishments for the violation of both secs. 940.31 and 940.02(2), Stats., I must dissent.

It is unnecessary to restate the facts, since this appeal concerns only an interpretation of the statutes involved. The trial court found that the victim's death was a natural and probable consequence of the commission of the kidnapping by the defendant, contrary to secs. 940.31 and 940.02(2), Stats.[1] The court imposed a sentence of fifteen years for the kidnapping and a consecutive sentence of fifteen years for the murder. The defendant claims she was twice put in jeopardy, in violation of the Fifth and Fourteenth Amendments of the United States Constitution and art. I, sec. 8 of the Wisconsin Constitution,

[1] Sections 940.31 and 940.02(2), Stats., provide as follows:

"940.31 **Kidnapping.** (1) Whoever does any of the following is guilty of a Class B felony:

"(a) By force or threat of imminent force carries another from one place to another without his consent and with intent to cause him to be secretly confined or imprisoned or to be carried out of this state or to be held to service against his will; or

"(b) By force or threat of imminent force seizes or confines another without his consent and with intent to cause him to be secretly confined or imprisoned or to be carried out of this state or to be held to service against his will; or

"(c) By deceit induces another to go from one place to another with intent to cause him to be secretly confined or imprisoned or to be carried out of this state or to be held to service against his will.

"(2) Whoever violates sub. (1) with intent to cause another to transfer property in order to obtain the release of the victim is guilty of a Class A felony; but if the victim is released without permanent physical injury prior to the time the first witness is sworn at the trial the defendant is guilty of a Class B felony."

"940.02 **Second-degree murder.** Whoever causes the death of another human being under either of the following circumstances is guilty of a Class B felony:

". . .

"(2) As a natural and probable consequence of the commission of or attempt to commit a felony."

because kidnapping is a lesser included offense of felony murder. Section 940.02(2), Stats.

The United States Supreme Court has stated that the guarantee against double jeopardy does not prohibit the imposition of sentences for both an offense and its lesser included offense if the legislature has authorized the imposition of such sentences. *Albernaz v. United States,* 450 U.S. 333, 340, 344 (1981).

The general rule that one is not to be convicted of and sentenced for both an offense and its lesser included offense does not apply if the legislature has clearly indicated a contrary intent. The legislative history of sec. 940.02(2), Stats., indicates that the legislature intended that one could be convicted of and sentenced for both felony murder and the underlying felony (in this case, kidnapping). The penalty structure for felony murder has changed several times in the past thirty years.

In 1977, substantial revisions were made in the penalty structure of the criminal code. At that time, the most recent attempt was made to repeal the felony murder statute concerned herein. Senate Bill 14, section 28. The note and explanation stated:

"Present law already permits the sentencing of offenders on multiple counts for different crimes arising from the same act. For example, a person committing homicide while committing a robbery can be sentenced to concurrent or consecutive terms for both robbery and homicide. Therefore, the third-degree murder statute is unnecessary." Senate Bill 14, section 28 (1977).

That a defendant can be sentenced for both a homicide and the underlying felony is clear from these notes of the drafters of Senate Bill 14. Prior to enactment, a new subsection was added, making felony murder a type of second-degree murder. Assembly Substitute Amendment 1 to Senate Bill 14, section 6. That bill did not include a note explaining the amendment. *Id.* The final statute is consistent with the sentencing structure discussed in the

note to Senate Bill 14, section 28.

If the majority is correct in its interpretation, then one who causes the death of another in the course of committing another class B felony would be exposed to only the maximum sentence for the underlying felony. As the trial court correctly noted, that would mean that one who has already committed a class B felony would have no reason to be concerned about the victim's life or safety. Clearly, the legislature did not intend such an absurd result.

The opinion of the United States Supreme Court on this question was clearly expressed in the recent decision of *Missouri v. Hunter:*

"Our analysis and reasoning in *Whalen* and *Albernaz* lead inescapably to the conclusion that simply because two criminal statutes may be construed to proscribe the same conduct under the *Blockburger* test does not mean that the Double Jeopardy Clause precludes the imposition, in a single trial, of cumulative punishments pursuant to those statutes. The rule of statutory construction noted in *Whalen* is not a constitutional rule requiring courts to negate clearly expressed legislative intent. . . .

"Where, as here, a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct under *Blockburger,* a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Missouri v. Hunter,* 51 U.S..L.W. 4093, 4096 (Jan. 19, 1983).

I believe this court should follow the guidelines set forth above. I believe that the legislature, not this court, should prescribe the scope of the punishment for criminal offenses. I would affirm the trial court.

I am authorized to state that JUSTICE ROLAND B. DAY and JUSTICE WILLIAM G. CALLOW join in this dissenting opinion.